Fred T. DURROUGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 65792.

Court of Criminal Appeals of Texas, En Banc.

July 22, 1981.

C. N. Rothe, Warren Weir, San Antonio, for appellant.

Bill M. White, Dist. Atty., Dick Ryman, Bill Blagg, Roy Barrera, Jr., and Linda S. McDonald, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

The appellant has been indicted and placed on trial three times for the murder of Henry S. Tyler. The first trial, Cause No. 74–CR–575–A, was aborted when the trial court granted the State's motion to dismiss the original indictment after only five jurors had been selected and sworn. The appellant was reindicted and found guilty of the offense of capital murder in Cause No. 74–CR–2140–A, but that judgment was reversed on appeal because the trial court erred in failing to grant a change of venue upon the appellant's uncontroverted application. *Durrough v. State*, 562 S.W.2d 488 (Tex.Cr.App.1978). After the case was remanded, but before the trial which resulted in the present conviction began, the State moved to dismiss the then pending indictment because it was "faulty." A third indictment charging the appellant with the same conduct for which he previously had been tried was obtained, and the appellant was found guilty and sentenced to death a second time. He appeals from that judgment entered in Cause No. 79–CR–0078.

We shall first consider the appellant's claims that the prosecution for this offense was barred.

### I.

The appellant contends that the dismissal of the indictment in Cause No. 74–CR–575–A after five jurors had been impaneled prevented the State from subsequently trying him under a new indictment charging the same offense. He advances two arguments to support his conclusion that the

Double Jeopardy Clause of the Fifth Amendment precluded a second trial. The appellant contends that retroactive effect should be given to *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), which applied to the states the federal rule that jeopardy attaches in a jury trial when the jury is impaneled and sworn. See *McElwee v. State*, 589 S.W.2d 455, 460 (Tex. Cr.App.1979). He further contends that for jeopardy purposes a jury is impaneled and sworn in a "death penalty case" when the first juror is selected. We find that the dismissal of the original indictment did not bar the appellant's second trial regardless of whether jeopardy had attached.

■■■ A defendant may be subjected to the kind of jeopardy that bars a second trial even though the first trial is discontinued without a verdict. But the double jeopardy provision of the Fifth Amendment does not mean that every time a defendant is put to trial he is entitled to go free if the trial fails to end in a final judgment. *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Whether there can be a new trial for the same offense after a mistrial or the dismissal of an indictment over the defendant's objection depends on whether there is a manifest necessity for the early termination of the first trial, or the ends of public justice would otherwise be defeated. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The Supreme Court of the United States has specifically held that a new trial is not barred by the Double Jeopardy Clause when a mistrial [1] is declared because the indictment was insufficient to charge an offense.

"If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the [State] proceed with its proof when, if it succeeded before the jury, it would auto-matically be stripped of that success by an appellate court." *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973).

■■■ In the instant case the trial court dismissed the original indictment because it failed to charge an offense.[2] Since this error would have made reversal on appeal a certainty, the State was not required by the Double Jeopardy Clause to proceed to a final judgment in Cause No. 74–CR–575–A. The Fifth Amendment was not a bar to the appellant's second trial.

The appellant next contends that the State responded to the successful appeal of his first conviction by obtaining a new indictment charging a more serious offense, based on the same conduct for which he previously had been tried, in violation of the Fourteenth Amendment. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Ronk v. State*, 578 S.W.2d 120 (Tex.Cr.App.1979).

Following the dismissal of the original indictment the appellant was reindicted and tried in Cause No. 74–CR–2140–A. The indictment in that cause alleged, in pertinent part:

"that Fred T. Durrough ... on or about the 11th day of August, A.D., 1973, did then and there unlawfully, voluntarily, and with his malice aforethought, kill and murder Henry S. Tyler ... and the said Fred T. Durrough was then and there in the course of committing and attempting to commit the offense of burglary."[3]

This indictment was also dismissed on the State's motion after the judgment in Cause No. 74–CR–2140–A was reversed, and a new indictment which contained the additional culpable mental states of "intentionally and knowingly" was returned. The two indictments were similar in all other respects. The appellant contends that the

---

1. It does not matter for jeopardy purposes whether the trial court characterizes its termination of the first trial as a declaration of mistrial or a dismissal of the indictment. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).

2. The indictment in Cause No. 74–CR–575–A charged an offense that had not been created at the time of the alleged murder. The indictment alleged a violation of V.T.C.A., Penal Code, Section 19.03(a)(2), which had not taken effect.

3. A second paragraph alleged the same offense but substituted robbery for burglary.

dismissed indictment did not charge the offense of capital murder because it failed to allege that the murder was committed "intentionally" during the course of committing and attempting to commit burglary and robbery.[4]

■ The State responds that the culpable mental state of intentionally was included within the term malice aforethought. The State concludes that the second indictment (Cause No. 74–CR–2140–A) adequately charged the offense of capital murder under Art. 1257(b)(2) even though the word "intentionally" was not included. The term malice aforethought means the "willful and *intentional* doing of some wrongful act," or "that condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, which is evidenced by the *intentional* doing of wrongful acts without legal excuse." *Crutchfield v. State*, 110 Tex.Cr.R. 420, 10 S.W.2d 119, 121 (1928) (Emphasis added.) An averment that murder was committed with malice aforethought necessarily includes the idea that the killing was intentional. The indictment in question alleged that the appellant did "unlawfully, voluntarily, and with his malice aforethought, kill and murder Henry S. Tyler." This averment adequately alleged the element of intent required by former Art. 1257(b)(2). See *Sanders v. State*, 402 S.W.2d 735 (Tex.Cr.App.1966) (averment that the murder was committed with malice aforethought included an allegation that the murder was "voluntary"). The appellant's contention that the State improperly elevated the grade of offense from murder to capital murder by adding the culpable mental state of intentionally to the final indictment is rejected.

The appellant further contends that his retrial in Cause No. 79–CR–0078 violated the rule announced in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Green*, the defendant was charged with first degree murder and found guilty of the lesser included offense of second degree murder. That conviction was reversed on appeal and the appellant was retried for the offense of first degree murder. On appeal from this new trial, the Supreme Court of the United States held that because the jury's verdict in the first trial was an implicit acquittal on the charge of first degree murder, Green could not be tried a second time for that offense. The Double Jeopardy Clause required that the retrial be limited to the lesser included offense of second degree murder.

■ *Green* is not applicable to the instant case. The appellant in this case was not acquitted of any charge. He was indicted for and found guilty of the offense of capital murder. Following an appeal of that conviction the appellant was retried for the same offense. This retrial did not offend the double jeopardy provision of the Fifth Amendment. It is clear that a defendant may be tried a second time for an offense when his prior conviction for that same offense has been set aside on appeal. *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The reversal granted the appellant a new trial and he could be retried on the original indictment or, as in this case, on a new indictment charging the same offense. *Whitehead v. State*, 162 Tex. Cr.R. 507, 286 S.W.2d 947 (1956); *Harvey v. State*, 64 S.W. 1039 (Tex.Cr.App.1901).

■ The appellant also contends that his last trial was barred by the doctrine of double jeopardy because of willful prosecutorial misconduct that occurred during the second trial of this case. The appellant claims that at the second trial the prosecution failed to disclose favorable evidence regarding deals with accomplice witnesses made in exchange for their testimony. He concludes that this willful misconduct barred any future prosecution for this of-

---

4. Former V.T.C.A., Penal Code, Art. 1257, provided in pertinent part:
 "(b) The punishment for murder with malice aforethought shall be death or imprisonment for life if:
 * * * * * *
 "(2) the person *intentionally* committed the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, forceable rape, or arson;" (Emphasis added.)

fense. We find no support for the appellant's contention. The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrials so as to afford the prosecution a more favorable opportunity to convict the defendant. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). But when the trial proceeds to its conclusion despite a legitimate claim of seriously prejudicial error, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is reversed on appeal. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). In the present case the alleged misconduct did not result in a mistrial. The appellant was found guilty of capital murder and sentenced to death. That judgment was reversed on appeal and the case was remanded for a new trial. We reject the appellant's contention that the alleged misconduct was a bar to further prosecution for this offense.

The appellant next contends that the trial court erred in overruling his timely motion to dismiss the indictment in Cause No. 79–CR–0078 for lack of a speedy trial. The judgment in Cause No. 74–CR–2140–A was reversed by this Court on March 8, 1978, and the appellant's new trial was set for June 19, 1978. At the appellant's request, the trial date was reset for August 7, 1978. Four days prior to the new trial setting the appellant filed a second motion for continuance and a waiver of his right to a speedy trial. He again requested a continuance and waived his right to a speedy trial on September 25, 1978. At that time the trial court set the case for trial on January 15, 1979. On January 11, 1979, the State obtained a new indictment charging the appellant with the same offense, and the case subsequently proceeded to trial as Cause No. 79–CR–0078. On January 16, 1979, the trial court dismissed the indictment in Cause No. 74–CR–2140–A and or-

dered that all papers filed and ordered entered in that cause would be treated as if they had been filed and acted upon in Cause No. 79–CR–0078. The appellant contends that the State could not have been ready for trial within the time limit prescribed by Art. 32A.02, Sec. 1, V.A.C.C.P., because the indictment upon which the present conviction was based was not returned until more than 120 days after the commencement of this action.[5] His argument depends on the premise that the waivers of his statutory right to a speedy trial filed in Cause No. 74–CR–2140–A were not applicable to Cause No. 79–CR–0078. The statute implies the contrary.

Article 32A.02, Section 4, provides several periods of time that shall be excluded in computing the time by which the State must be ready for trial. Subsection (7) deals with dismissals; it provides that there shall be excluded, "if the charge is dismissed upon motion of the state . . . and the defendant is later charged with the same offense or another offense arising out of the same transaction, the period of delay from the date of dismissal . . . to the date the time limitation would commence running on the subsequent charge had there been no previous charge . . . ." This subsection does not exclude any time in this case because the appellant was not "later charged"; the subsequent indictment was filed before the dismissal of the previous one. But it is nonetheless important, because it implies a continuing relationship between the time periods covered by the previous indictment and the subsequent one. This exclusion is designed to prevent abuse of the time limits by the State, and it should be construed to provide that the defendant is entitled to add (to the time on the subsequent charge) the time which expired while the previous charge was pending. Cohen, "Senate Bill 1043 and the Right to a Speedy Trial in Texas," 7 American Journal of Criminal Law 23, 35–36 (1979).

---

**5.** This action began for purposes of the Speedy Trial Act on July 1, 1978. *Wade v. State,* 572

S.W.2d 533 (Tex.Cr.App.1978).

By the same token, a defendant should not be able to add time which expired during periods of continuance that he requested while the previous charge was pending, at least not when the previous charge and the subsequent charge are identical. To allow a defendant to do so would not further the purpose of preventing abuse of the time limits by the State. In the circumstances of this case we hold that the periods of delay resulting from continuances in the previous cause granted at the request of the defendant[6] were excluded properly from the computation of time in the subsequent cause. The trial court acted correctly in "transferring" the waivers.

## II.

We now turn to the appellant's grounds in which he asserts that he is entitled to a new trial.

By his eighth ground of error the appellant contends that the exclusion of Venire Member Jo Ann Scott from the jury over his objection violated the Sixth and Fourteenth Amendments as construed and applied in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The following portions of Scott's voir dire examination are relevant:

"JO ANN SCOTT

"BY THE COURT:

"Q. Please be seated. You are Jo Ann Scott?

"A. Yes.

"Q. Mrs. Scott, do you have conscientious scruples in regard to the infliction of the punishment of death for crime?

"A. Yes. I do.

"MR. WEIR: Your Honor, I make my Witherspoon constitutional amendment objections.

"THE COURT: Overruled.

"BY THE COURT:

"Q. Does that mean you could not in a proper case if you felt the facts warrant it, vote for a verdict that would result in the Death Penalty being inflicted?

"THE WITNESS: I don't think in all consciousness [sic] I could.

"THE COURT: I can't hear you?

"THE WITNESS: I don't think in all consciousness [sic] I could vote for someone to, for me to inflict death on any human being. I don't think I could.

"THE COURT: All right. Are you saying that you couldn't do this in any case, regardless of the facts?

"THE WITNESS: I don't think I could. No.

"THE COURT: All right. The defense may inquire."

After an explanation of the death penalty trial procedure in Texas, Scott was asked:

"ON BEHALF OF THE DEFENDANT

"BY MR. WEIR: * * *

"Q. * * * Now, under those circumstances do you think that you could give a fair verdict of guilty or not guilty based on the facts and come out, okay, could you go that far?

"A. Yes. I can go that far.

\* \* \* \* \* \*

"Q. Okay. Now, could you decide those questions[7] based on the evidence and follow the law in that respect?

"A. I could follow the law but I would still feel responsible. Morally responsible.

"Q. Well, I feel you might feel morally responsible but what I'm asking you however you feel on the end when it's all over, could you follow the law and answer those questions based only on the evidence?

"A. Yes. I could.

---

6. V.A.C.C.P. art. 32A.02, sec. 4(3).

7. Article 37.071(b)(1) & (2), V.A.C.C.P.

"Q. Okay. And you could do that even though you might realize that somewhere down the line the legislature has said if the evidence comes out a certain way and the jury gives certain answer [sic] the Judge may have to give the Defendant the Death Penalty?

"A. Yes. I do.

\* \* \* \* \* \*

"Q. Okay. And and I'm not trying to talk you into anything I'm just trying to make sure you understand what's going on since you haven't been a juror before. Do you feel that you could answer these questions based on the evidence if that's what the law says a juror must do in these cases?

"A. Yes. I could answer those questions.

"Q. Okay. Thank you Mrs. Scott. That's all I have.

"BY THE COURT:

"Q. Let me ask you very specifically as Mr. Weir explained to you the jury is going to have the function of listening to the testimony of the witnesses and then reaching a verdict. You deliberate on the facts and based on your deliberation you will say the Defendant is guilty of whatever offense you find him guilty of or he's not guilty of any offense. If the Defendant is found guilty by the jury after their deliberation of Capital Murder you will then be asked some questions. There are only two possible punishments if the Defendant is found guilty of Capital Murder and that's death or life imprisonment. If the jury answers both questions, yes, I will sentence the Defendant to death. If they do not answer both questions yes I will sentence him to life imprisonment.

Now, you will have to deliberate on the fact issues that would result in the verdict and would result in answering the questions. Can you say that your deliberation on those fact issues would not be affected by your knowledge of the mandatory punishments of life imprisonment or death?

"THE WITNESS: No I cannot say that.

"THE COURT: All right. Do you want to question her any more.

"MR. WEIR: A little bit. Yes.

"ON BEHALF OF THE DEFENDANT

"BY MR. WEIR: \* \* \*

"Q. [W]hat we are saying is and what we want a true answer from you on is, could you, notwithstanding . . . having some scruples against the Death Penalty could you nevertheless, go on and give fair judgment to the evidence when you answer those questions notwithstanding your feeling and base your judgments only on the evidence and not on anything the legislature or the Judge is going to have to do later?

"A. But I would still feel as the Judge was saying that I would still think about the consequences of my judgment.

\* \* \* \* \* \*

"Q. [C]ould you . . . be a juror and make or base your decision only on the evidence, that's it?

"A. I could but I would still like I said, I would still feel morally responsible. I really would. I will I would still feel morally responsible.

"THE COURT: Would your knowledge of the mandatory punishments of life imprisonment or death effect [sic throughout] your deliberations on the fact issues?

"A. Yes. It would.

"MR. WEIR: I didn't hear that I'm sorry.

"THE COURT: Her answer was, yes. Do you want me to restate the question.

"MR. WEIR: Yes.

"THE COURT: The question was a virtual quotation of 12.31(b), subsection

5. She said it would effect it. There is a challenge.

"MR. BARRERA [Prosecutor]: There is, Your Honor.

\* \* \* \* \* \*

"ON BEHALF OF THE DEFENDANT
"BY MR. WEIR:
"Q. You have already said it might effect the way you feel later. It might effect the way you feel now. Would it effect your judgment?
"A. At the time.
"Q. About how you hear the evidence?
"A. No. It wouldn't effect on how I heard the evidence but at the time of deliberation, at the time that they would ask me these two questions I would feel morally responsible.

\* \* \* \* \* \*

"THE COURT: Would it or would it not effect your deliberation?
"THE WITNESS: Yes. It would.
"THE COURT: All right. You are excused. . . .
"MR. WEIR: Your Honor, under Witherspoon I object to her being excused."

■ It does not appear from the record that Scott was so irrevocably opposed to capital punishment that she could not follow the law or obey the instructions of the trial court. To the contrary Scott repeatedly stated that she could answer the questions put to her based on the evidence presented at the punishment phase of the trial. We conclude that V.T.C.A. Penal Code, Section 12.31(b) was applied by the trial court in the instant case to exclude a prospective juror whose only fault was to acknowledge honestly that she had conscientious scruples against capital punishment and that the mandatory penalty of death or imprisonment for life might affect her deliberations. On this state of the record we hold that the exclusion for cause of Scott from jury service contravened the Sixth and Fourteenth Amendments. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The Constitution of the United States disentitles the State to execute a sentence of death imposed by a jury from which even one putative juror has been excluded because of such a general objection to capital punishment. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). And this Court has recently held that in such cases the judgment of guilt must be reversed. *Evans v. State*, 614 S.W.2d 414, reh. den. April 29, 1981.

### III.

The appellant moved to disqualify the judges of this Court[8] from "ruling" on his appeal from a conviction for capital murder. He requested that we rule on the motion before the appeal was submitted. This we did. We denied the motion, and we take this occasion to explain the reasons for that decision.

We reversed an earlier conviction of this appellant for the same offense. *Durrough v. State*, 562 S.W.2d 488 (Tex.Cr.App.1978). On remand, the State moved to dismiss the indictment in that cause because it was "faulty" and because the grand jury had issued another indictment for capital murder. The motion to dismiss was granted. The appellant then took the position that the indictment which had been dismissed actually had charged only murder, not capital murder, and that to reindict him for capital murder would put him twice in jeopardy.[9] The trial court agreed with the appellant and ordered "that the State is precluded from seeking the death penalty in

---

8. Since the denial of the motion, two judges of this Court have left the bench. The appellant's motion cannot be directed to the two members of the Court who were not yet sitting when it was filed.

9. A similar argument is raised on appeal, and it is rejected today.

this Cause." The State announced its intention to seek a writ of mandamus from a higher court, and the proceedings were recessed on January 23, 1979. On January 26, this Court received the State's motion for leave to file application for writ of mandamus (our Writ No. 7794).

The next events of record all occurred on January 29. The trial court entered an order which stated:

"The Court having received an informal communication from the Court of Criminal Appeals of Texas that a substantial consensus of the Court of Criminal Appeals was to the effect that the indictment [which had been dismissed] fairly charged Capital Murder, and further, if this Court would withdraw it's [sic] Order heretofore entered precluding the State from seeking the death penalty, the Court of Criminal Appeals would take no action on an Application for Writ of Mandamus presented to the Court of Criminal Appeals; wherefore

"It is ORDERED that the Order of this Court entered January 23, 1979, precluding the State from seeking the death penalty in this Cause be, and the same is hereby, withdrawn."

The appellant's written response to the State's motion was received in this Court. This Court denied the State leave to file its application for writ of mandamus.

The appellant's motion now before us, to disqualify the judges who considered the State's motion for leave to file application for mandamus, argues that the impartiality of those judges is questionable. This argument depends on premises which are incorrect.

The most important flaw in the appellant's argument is the assumption that a judge who rules on an issue at one stage of a proceeding becomes partial, and is barred from ruling on that issue at any later stage.

Specifically, the appellant assumes that the judges of this Court must never have considered any aspect of a case before it reaches them on appeal, lest they be disqualified from considering the appeal.

There are many occasions on which judges are called to reconsider matters on which they have ruled before.[10] For example, evidence may be objected to after the court has denied a pretrial motion in limine concerning the same evidence. Trial courts have a duty to decide after trial whether their rulings were correct. V.A.C.C.P. Article 40.09(12). Appellate courts may be asked to rehear matters they have determined. Texas Court of Criminal Appeals Rule 11; Texas Rules of Civil Procedure 458 & 515. In no such case is a judge required to disqualify himself because his earlier consideration of an issue has impaired his impartiality.

█ Specifically, an appellate judge is not disqualified from considering an appeal because he earlier has considered an issue in the case. The United States and many states permit the prosecution to seek review of pretrial rulings in criminal cases. American Bar Association, Standards Relating to Criminal Appeals 36–37 (Approved Draft 1970). *See generally* Annotation, 91 A.L.R.2d 1095 (1963); Annotation, 92 A.L.R. 1137 (1934). It cannot be suggested seriously that the judges of the appellate courts in those jurisdictions are disqualified from considering an appeal from a subsequent conviction in such a case.

█ The State's attempt to secure review of the pretrial ruling in this case was proper. Only recently has this Court's jurisdiction to issue extraordinary writs been expanded. From 1891 through 1977, Article 5, Section 5, of the Texas Constitution gave this court a general "power to issue the writ of habeas corpus," but only a limit-

---

10. In fact, the matter now before us arose from a reconsideration. The trial court originally denied the appellant's jeopardy motion. It was on reconsideration that it decided to grant the motion. To be strictly consistent, the appellant would have to argue that the trial court was disqualified from reconsidering his motion because it was no longer impartial.

ed power to issue other writs "as may be necessary to enforce its own jurisdiction." This provision of the Constitution was amended, effective January 1, 1978, to give this Court the power "regarding criminal law matters . . . to issue the writs of habeas corpus, mandamus, procedendo, prohibition, certiorari" generally, as well as "such other writs as may be necessary to protect its jurisdiction or enforce its judgments." This amendment gave this Court authority to issue extraordinary writs beyond those strictly necessary to protect its jurisdiction or enforce its judgments. *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App.1978). This jurisdiction includes writs of prohibition to prevent a trial court from unlawfully entering a judgment of acquittal because of prior jeopardy. *State ex rel. Hawthorn v. Giblin*, 589 S.W.2d 431 (Tex.Cr.App.1979). Therefore we cannot accept the appellant's premise that the State acted improperly in seeking a writ of mandamus.

The appellant is also mistaken in arguing that this Court's communication to the trial court was a "private communication concerning a pending or impending proceeding," in violation of Canon 3(A)(4) of the Code of Judicial Conduct. To begin with, the proceeding was not ex parte; the appellant was served with a copy of the State's motion. The record does not show any ex parte communication to this Court. As for this Court's communication to the trial court, the Canon which is cited has no application. Its purpose is to prevent interested parties from communicating to a judge.[11] It does not speak to the form of this Court's communicating its decision to a lower court.

 The appellant makes several complaints about the procedure this Court followed in handling the State's motion for leave to apply for writ of mandamus. He points out that the Court effectively granted the writ by communicating a substantive decision to the trial court, while at the same time it anomalously denied leave to apply for the writ. He complains that he was denied an opportunity to be heard on the State's motion. These complaints are not without weight, and we should not be understood to be rejecting their merits. But today they are moot. The appellant has appealed his conviction, and we have given plenary consideration to the issue that was presented by the State's motion. We have held again that the appellant's jeopardy argument was not well taken. Any procedural defects in the mandamus proceedings are therefore moot.

 For a similar reason, we cannot sustain the appellant's complaint that he has been denied the effective assistance of counsel on appeal. To the contrary, his counsel have presented his jeopardy argument fully. This complaint about counsel on appeal is, according to the appellant, based on the same reasoning that supported his complaint about this Court's not being impartial. Its premises are likewise faulty. The fact that an appellant's case came before us once without his counsel's assistance would not mean that it could never again come before us with his counsel's assistance. The appellant's grounds of error in his appeal have received full and plenary consideration; none of them was prejudiced or foreclosed by this Court's action on the mandamus motion.

We have denied the appellant's motion to disqualify the judges of this Court, and have proceeded to decide his appeal.

The judgment is reversed and the cause is remanded.

McCORMICK and TEAGUE, JJ., not participating in part III.

---

11. Canon 3(A)(4) reads:
 "A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other private communications concerning a pending or impending proceeding."