Joseph Paul **TURNER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 68859.

Court of Criminal Appeals of Texas, En Banc.

July 14, 1982.

---

Michael R. Gibson, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Ruben Bustamante, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W. C. DAVIS, Judge.

Appellant was convicted of capital murder. Punishment was assessed at death.

■ Appellant now contends insufficient evidence was adduced to show that appellant committed the murder in the course of a robbery arising from the theft of property owned by Laura Iaeger, in that ownership was not proved in Iaeger.

Iaeger testified that she had been the manager of the donut store where the victim worked and was slain, and that as manager, she had care, custody and control of the premises, and was responsible for the store even when off duty.

Iaeger's special ownership was sufficiently established. *Compton v. State*, 607 S.W.2d 246 (Tex.Cr.App.1980) (Opinion on State's Motion for Rehearing), cf. *Commons v. State*, 575 S.W.2d 518 (Tex.Cr.App.1979).

■ Appellant next contends the court erred in excluding for cause, over the objection of defense counsel, certain venirepersons who asserted their opposition to the death penalty.

The record shows that prospective juror Bates expressed strong religious reservations to assessing the death penalty: "By Mr. Weiser:

Q. Mrs. Bates, let me begin by asking you if you feel you could participate on a jury that had to make that decision, that is whether or not the person receives the death penalty?

A. I don't really think I could.

Q. Is that because you carry a feeling inside that—either a religious feeling or moral feeling or conscientious objection to the death penalty. Is that how you feel?

A. It is a religious.

Q. Is this feeling you have carried with you for a long period of time?

A. Nods Head Affirmatively

Q. You are not alone. There is a lot of people that feel exactly the same way you do. Because we live in this country, we all have a right to disagree with any law. Are you telling me this is a deep strong feeling that you are opposed to the death penalty?

A. Yes.

Q. Are you telling me that no matter what the facts are in the case, no matter how gruesome the case might be, you could never ever vote in such a way that the death penalty would be imposed? Is that what you're telling me?

A. I don't think I could stand it on my conscience.

Q. I understand that. So no matter how horrible the crime is, I want you to think of the most horrible crime in your mind you can think of, your feeling about the death penalty, it is so strong you could never vote in such a way that you could vote for the death penalty to be meted out or handed down by the Court. Is that correct?

I need for you to answer so the Court Reporter can get it down.

A. Yes.

Q. There is nothing I could say to change your mind?

A. I don't think so.

MR. WEISER: Your Honor, under *Witherspoon*, I would challenge."

Appellant's counsel thereupon explained to Bates that the guilt and punishment stages of a trial are bifurcated, and that at the punishment stage, if any, the jurors would be instructed to answer two questions "yes" or "no":

"Now, you then will be instructed by the Court, after the evidence is all in on a punishment that you are to answer two questions, either yes or no. If both of those questions are answered yes, then the Court imposes capital punishment. If either or both are answered no, then in that event the Court imposes automatically a life sentence.

"Now the State will put on evidence and then the burden of proof, beyond a reasonable doubt, to convince you that the answers should be yes, first to a question roughly as follows: Do you find beyond a reasonable doubt that the defendant who has been convicted in this case was deliberate and was done with an expectation that the death of someone would result or be the result of that conduct. You can consider the evidence that has been put on at the punishment stage and you can answer that question either yes, if all of you are convinced, unanimously, beyond a reasonable doubt; or no, if you are not so convinced.

"The second question is whether you find beyond a reasonable doubt that the defendant—there is a probability that the defendant would commit criminal acts of violence in the future, dangerous to society and again, your answers must be based on the evidence and the Court will instruct you, and you, of course, will take an oath to abide by those instructions, that you must be convinced beyond a reasonable doubt that the answer is yes and he will instruct you to answer yes. If you are not, or if you have a reasonable doubt as to that issue, you then answer *no*, okay? * * *

Now in light of that explanation, I will then ask you whether if the Court gave you the instructions we have discussed and gave you the statement of the law and you were selected on such a jury, in spite of your opposition to the death penalty, would you follow the instructions of the Court and the law in light of the explanation of our system.

A. Yes.

MR. GIBSON: Thank you.

THE COURT: The challenge is sustained on the basis of *Witherspoon*. You will be excused.

MR. GIBSON: Note our objection."

Bates stated unequivocally that she would follow the instructions and the law in answering the punishment questions despite her opposition to the death penalty.

No further examination of Bates was undertaken by the State or by the court. Compare *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr.App.1981), in which the challenged venirepersons, after indicating they could follow the law, were re-examined by the State and stated that they did not believe they could answer punishment questions "yes" knowing that a death sentence would result from a unanimous death verdict.

The examination of venireperson Bates bears a striking resemblance to that of venireperson Scott in *Durrough v. State*, 620 S.W.2d 134, 140 (Tex.Cr.App.1981):

" 'BY THE COURT:

Q. Please be seated. You are Jo Ann Scott?

A. Yes.

Q. Mrs. Scott, do you have conscientious scruples in regard to the infliction of the punishment of death for crime?

A. Yes, I do,

MR. WEIR: Your Honor, I make my Witherspoon constitutional amendment objections.

THE COURT: Overruled.

BY THE COURT:

Q. Does that mean you could not in a proper case if you felt the facts war-

rant it, vote for a verdict that would result in the Death Penalty being inflicted?

THE WITNESS: I don't think in all consciousness [sic] I could.

THE COURT: I didn't hear you?

THE WITNESS: I don't think in all consciousness [sic] I could vote for someone to, for me to inflict death on any human being. I don't think I could.

THE COURT: All right. Are you saying that you couldn't do this in any case, regardless of the facts?

THE WITNESS: I don't think I could. No.

THE COURT: All right. The defense may inquire.'

After an explanation of the death penalty trial procedure in Texas, Scott was asked:

'ON BEHALF OF THE DEFENDANT BY MR. WEIR: * * *

Q. * * * Now, under those circumstances do you think that you could give a fair verdict of guilty or not guilty based on the facts and come out, okay, could you go that far?

A. Yes. I can go that far.

＊　　＊　　＊　　＊　　＊　　＊

Q. Okay. Now, could you decide those questions[7] based on the evidence and follow the law in that respect?

A. I could follow the law but I would still feel responsible. Morally responsible.

Q. Well, I feel you might feel morally responsible but what I'm asking you however you feel on the end when it's all over, could you follow the law and answer those questions based only on the evidence?

A. Yes, I could.

[Footnote] 7. Article 37.071(b)(1) & (2), V.A.C.C.P.' "

Scott later went on to state that her knowledge of the mandatory punishment would affect her deliberations and was excused upon that basis, and this Court found the excusal to constitute error under the rule of *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), 620 S.W.2d at 142.

A fortiori, the excusal of Bates, who stated directly that her opposition to the death penalty would not prevent her from returning a verdict consistent with the instructions of the court and the facts proved, was in violation of the rule of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

 The death penalty may not be imposed after a trial by a jury from which even one venireperson has been excluded in violation of the rule of *Witherspoon*. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976).

Although *Witherspoon* error requires setting aside only the death sentence as a matter of Federal Constitutional law, this Court has held that such error requires reversal of the judgment. *Evans v. State*, 614 S.W.2d 414 (Tex.Cr.App.1981).

The judgment is reversed and remanded.