**James G. BUFFINGTON, Sr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68819.**

Court of Criminal Appeals of Texas,
En Banc.

May 11, 1983.

Rehearing Denied June 29, 1983.

David K. Chapman (court appointed), John R. Hrncir (court appointed), Marvin B. Zimmerman (court appointed), San Antonio, for appellant.

Bill M. White, Dist. Atty., Charles T. Conaway, Keith Burris, Bill Blagg, Lawrence R. Linnartz and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant was convicted of capital murder. Upon the jury's findings that the killing was deliberate and that appellant represents a continuing threat to society, punishment was assessed at death. Art. 37.071, V.A.C.C.P.

Appellant contends the court erred in excusing two veniremembers who expressed only general objections to the death penalty, in violation of the rule of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The State agrees, and confesses error in its brief. The record supports that agreement.

The judgment is reversed and remanded.

ONION, Presiding Judge, concurring.

In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court wrote:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

In footnote No. 9 of the *Witherspoon* opinion it was stated in part:

"... Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."

V.T.C.A., Penal Code, § 12.31(b), provides:

"Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction for capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

This court held after the enactment of said § 12.31(b) that *Witherspoon* and § 12.-31(b) could co-exist as separate and independent bases for excluding jurors in capital murder trials in this state. See, e.g., *Moore v. State,* 542 S.W.2d 664, 672 (Tex.Cr.App.1976), cert.den. 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266; *Woodkins v. State,* 542 S.W.2d 855 (Tex.Cr.App.1976), cert.den. 431 U.S. 960, 97 S.Ct. 2688, 53 L.Ed.2d 279; *Freeman v. State,* 556 S.W.2d 287, 297–298 (Tex.Cr.App.1977), cert.den. 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794; *Hughes v. State,* 563 S.W.2d 581, 583 (Tex.Cr.App. 1978), cert. den. 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640; *Bodde v. State,* 568 S.W.2d 344, 348–349 (Tex.Cr.App.1978), cert. den. 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784.

The aforementioned cases were the undisturbed decisions of this court at the time of the trial in the instant case.

In *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the United States Supreme Court considered the question of whether Texas contravened the Sixth and Fourteenth Amendments of the United States Constitution as construed and applied in the *Witherspoon* opinion when it excluded prospective jurors from service be-cause they were unable to take an oath that the mandatory penalty of death or life imprisonment would not affect their deliberations in any issue of fact. The court reversed the convictions in *Adams,* holding that the exclusions under said § 12.31(b) of the Texas Penal Code were inconsistent with *Witherspoon.* The Court made clear that *Witherspoon* and § 12.31(b) may not co-exist as separate and independent cases for excluding prospective jurors so as to permit exclusion under § 12.31(b) on a ground broader than permitted by *Witherspoon.* See *Evans v. State,* 614 S.W.2d 414 (Tex.Cr.App.1980); *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.1980); *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr.App.1981).

I have examined the voir dire examination of prospective jurors Lydia A. Raoul and Sheila Dix Wright, and I am convinced they were improperly excluded by the court, even though not disqualified by *Witherspoon,* and despite the timely objection on the basis of *Witherspoon* by appellant's counsel.[1]

The State has been candid in confessing error, and it is to be commended.

The improper excusal of even one juror under the *Witherspoon* doctrine calls for reversal as we are told by the United States Supreme Court. See *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). And such error calls for the entire case to be reversed. *Evans v. State, supra.*

For these reasons, I concur in the result reached by the majority.

I would also reverse the conviction for the unethical and unprofessional conduct of the assistant district attorney Charles Conaway in materially altering the transcription of tape recorded interviews with the State's principal witness, Charles Moore. The appellant was entitled to the same under the Gaskin Rule [*Gaskin v. State,* 172 Tex.Cr.R. 7, 353 S.W.2d 467 (Tex.Cr.App.1961)] for the purpose of cross-examination and possible impeachment of Moore. The transcrip-

---

1. This writer would question whether the prospective jurors were even disqualified under V.T.C.A., Penal Code, § 12.31(b), under the de-cisions of this court at the time of the voir dire examination.

tion was edited favorably to the State and thereafter Conaway tendered the transcription representing that it was "true and correct." The appellant was denied effective cross-examination of the witness Moore, *Mendoza v. State,* 552 S.W.2d 444 (Tex.Cr.App.1977), and an opportunity to show Moore's bias, animus and motive for testifying. I cannot join the dissent, however, in its conclusion that the appropriate remedy is to dismiss the indictment against Buffington. It is indeed regrettable that in this day and time that prosecutorial misconduct such as this still exists.

For the reasons stated, I concur.

CLINTON, Judge, dissenting.

The State confesses error to gain another trial, and the Court assents. I dissent.

The principal witness against appellant was his coindictee. After the State completed its direct examination of the witness, pursuant to *Gaskin v. State,* 172 Tex.Cr.R. 7, 353 S.W.2d 467 (Tex.Cr.App.1961), the trial court ordered the prosecution to turn over to counsel for appellant a transcription of recorded interviews of the witness by an assistant district attorney, who was to represent that the transcription was true and correct. However, counsel later learned and demonstrated it had been edited favorably to the State, principally by deletion of certain statements made by the assistant district attorney about the witness making "it easier and light on yourself."

The Supreme Court of the United States has made it absolutely clear that a trial need not be concluded by a jury verdict in order for an accused to assert that a prospective second trial is precluded by the Double Jeopardy Clause of the Fifth Amendment. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Accordingly, the Clause bars a second trial when the first is aborted because the prosecutor goaded an accused into moving for a mistrial. *Oregon v. Kennedy,* 456 U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Cf. *United States v. Dinitz,* 424 U.S. 600, 96

S.Ct. 1075, 47 L.Ed.2d 267 (1976): Clause does protect against governmental action done in bad faith with intent to provoke mistrial motion, *id.,* 424 U.S. at 611, 96 S.Ct. at 1081. The lesson is that egregious prosecutorial misconduct will forfeit the right of the State to subject an accused to a second trial.

In the instant case, however, a mistrial was not sought or granted—indeed, during the trial, counsel for appellant were not aware of the fact that the prosecution had severely redacted the transcription. Confronted with similar circumstances in *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr.App. 1981), also from Bexar County, this Court opined:

"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrials so as to afford the prosecution a more favorable opportunity to convict the defendant. [Citation omitted] But when the trial proceeds to its conclusion despite a legitimate claim of serious prejudicial error, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is reversed on appeal. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). In the present case the alleged misconduct did not result in a mistrial. The appellant was found guilty of capital murder and sentenced to death. * * * We reject the appellant's contention that the alleged misconduct was a bar to further prosecution for this offense."

*Id.,* at 139.

With deference, I point out that the other side of "a more favorable opportunity to convict" is, as the *Dinitz* Court phrased it, "to prejudice . . . prospects for an acquittal," *id.,* 424 U.S. at 611, 96 S.Ct. at 1081. Here during a posttrial hearing appellant proved that the transcription marked as Defendant's Exhibit 7 is an altered version of the original: four pages had been omitted,[1] one page was transposed and pagina-

---

1. Deleted were, among others, the following      statements the prosecutor made to the witness:

tion at the bottom of each remaining page had been cut off to conceal the fact that the transcription had been altered. Obviously, the prosecutor intended to and did deprive appellant of a meaningful opportunity to demonstrate bias and motive of the principal witness against him. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Harris v. State,* 642 S.W.2d 471 (Tex.Cr.App.1982). Prospects for an acquittal were purposefully harmed by the prosecutor.

So, to say, as the Court did in *Durrough,* that because prosecutorial misbehavior did not result in a mistrial the Double Jeopardy Clause is not a bar to a second trial, is to cost appellant some of the advantages secured by the Double Jeopardy Clause—the freedom from extended anxiety, expense and delay and the necessity to confront the government's case once—*United States v. Dinitz,* supra, 424 U.S. at 608, 96 S.Ct. at 1080.

Moreover, since a question of former jeopardy is fundamental and may be raised for the first time on appeal, *Muncy v. State,* 505 S.W.2d 925 (Tex.Cr.App.1974), we may also examine the issue in light of Article I, § 14 of the Texas Bill of Rights. See

*Duckett v. State,* 454 S.W.2d 755, 757 (Tex. Cr.App.1970) and *Jones v. State,* 586 S.W.2d 542, 544 (Tex.Cr.App.1979). And, as Justice Brennan pointed out in his concurring opinion in *Oregon v. Kennedy,* supra, a state is not required to construe its own constitutional provision in lockstep with the federal counterpart.

Recognizing the values and interests of an accused that the constitutional prohibition against double jeopardy was intended and designed to protect—one being "a valued right to have his guilt or innocence determined before the first trier of fact" and "upon the proof the State could adduce," *Torres v. State,* 614 S.W.2d 436, 441, 443 (Tex.Cr.App.1981)—this Court has ordered a criminal cause dismissed upon a finding that a second prosecution violated the Double Jeopardy Clause of the Constitution of the State of Texas, as well as of the United States, *id.,* at 443.[2]

When, as here, the record clearly reveals utterly unacceptable prosecutorial misconduct[3] to the demonstrable prejudice to appellant, or substantial threat thereof, dismissal of the indictment is an appropriate remedy.

"I know what happened. I want you to understand that if you testify in the case, that if I told you, if I promised you anything, then your testimony would be worthless. So I can't promise you anything at this stage of the proceeding; except that, if you cooperate and if you tell the truth ... then I'll see that you get treated fairly, appropriately, but I can't say I'll turn you loose. I can't say I'm going to give you life. I can't tell you I'm going to give you a term of years because I don't know. It will depend on what happens to Mr. Buffington. * * * You understand what I'm telling you. He told you to tell the truth about it and I believe that what you told us is the truth in part, but I think you left some things out. Let me tell you something else. · Anything you tell me right here, right now, I promise you it is not going to be used against you in any way. I promise you that. * * * What I want to know is something I could use against Buffington. He's the one I'm going to try first. He's going to go before anyone else. And we'll see what happens to you'll after he is tried. He's the one I'm interested in."

Later on the prosecutor put the blame on appellant, telling the witness that if it had not

been for appellant "you would be over there on Poplar and Zarzamora right now sitting in the shade drinking your wine," adding, "the question is whether you are ever going to go back out and drink the wine and that depends on you, Charles."

2. The State concerns which underlie implementing the right of a speedy trial are strikingly similar. E.g., *Fariss v. Tipps,* 463 S.W.2d 176, 178–179 (Tex.1971) and *Courtney v. State,* 472 S.W.2d 151, 153–154 (Tex.Cr.App.1971). When an accused makes a prima facie showing of prejudice which is not rebutted, the Court has granted habeas corpus relief and ordered the prosecution dismissed. *Ex parte McKenzie,* 491 S.W.2d 122 (Tex.Cr.App.1973).

3. "It shall be the primary duty of all prosecuting attorneys ... not to convict, but to see that justice is done." And to that end, "[t]hey shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused," Article 2.01, V.A.C.C.P. Moreover, along with the trial court and other officers of the court, they have the duty "to so conduct themselves as to insure a fair trial ... [and] not impair the presumption of innocence ..., Article 2.03, *id.*

Accordingly, I would order the prosecution dismissed.

TEAGUE and MILLER, JJ., join.