**Pamela Lynn PERILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68872.**

Court of Criminal Appeals of Texas, En Banc.

June 29, 1983.

Rehearing Denied Sept. 21, 1983.

William W. Burge, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Timothy G. Taft and Robert A. Moen, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Pamela Lynn Perillo, appellant, was found guilty by a jury of committing the offense of murder during the course of committing the offense of robbery. This constitutes the offense of capital murder. See V.T.C.A., Penal Code, Sec. 19.03(a)(2). Because the jury answered in the affirmative the statutory special issues which were submitted to it, the trial court assessed punishment at death. See Art. 37.071, V.A.C. C.P. Appellant does not challenge the sufficiency of the evidence, either as to guilt or punishment.

The issue which we must decide is whether the trial court erred in refusing appellant's trial counsel's request to question venireperson John O. Vennard. If we make

the determination that such was error, then we must decide whether such error was reversible error. After carefully reviewing the examination of venireperson Vennard, we find that the trial court committed error in refusing to permit appellant's trial counsel to examine Vennard, and further find that such refusal was reversible error. Therefore, we reverse appellant's conviction and punishment of death.

The voir dire examination of those persons who compose the jury panel in a capital murder case is conducted under the most demanding of conditions. This is primarily because the United States Supreme Court has held that *the death penalty cannot be carried out if even one prospective juror has been excused on a challenge for cause by the prosecuting attorney,* when the challenge is based solely upon the venireperson's opposition to the death penalty, unless the opposition results from the venireperson's inability to follow the law. *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1981); *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Maxwell v. Bishop,* 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Also see *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr.App.1981); *Pierson v. State,* 614 S.W.2d 102 (Tex.Cr.App.1980); *Burns v. Estelle,* 592 F.2d 1297 (5th Cir.1980), affirmed, 626 F.2d 396 (5th Cir.1980); *Jurek v. Estelle,* 623 F.2d 929 (5th Cir.1980), cert. denied, 450 U.S. 1014, 101 S.Ct. 1724, 68 L.Ed.2d 214 (1980). A plurality of the Supreme Court also has mandated that capital punishment cases are "constitutionally different" from non-capital punishment cases. *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). By virtue of Article VI of the United States Constitution, this Court is bound by the decisions of the Supreme Court.

Because of the importance of not excluding a prospective juror on a State's chal-

lenge for cause, unless that person is disqualified from serving as a juror, the process of examining prospective jurors in a capital murder case, before twelve persons are impaneled to take the oath to render a true verdict according to the law and the evidence, see Art. 35.22, V.A.C.C.P., is extremely tedious, costly, and time consuming to the litigants, the jurors, and the trial judge. All are therefore required to make manifest, and apply extreme patience during this phase of the trial.

■ In *Witherspoon v. Illinois,* supra, the Supreme Court decreed that a prospective juror in a death penalty case may not be excused by the trial judge, unless that person first makes it unmistakably clear that (1) he would automatically vote against the imposition of the death penalty without regard to the evidence which might be developed at the trial of the case, or (2) that the person's attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt. Also see *Adams v. Texas,* supra.

■ As previously noted, if even one prospective juror has been erroneously excused by the trial judge, on a challenge for cause by the State, when the challenge is based solely on the venireperson's opposition to the death penalty, and it is later determined on review that such person should not have been excused for that reason, in Texas this will result in the defendant not only being granted a new trial on the issue of punishment, but on guilt as well. *Fearance v. State,* 620 S.W.2d 577 (Tex.Cr.App.1981); *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.1982); *Loudres v. State,* 614 S.W.2d 407 (Tex.Cr.App.1981); *Pierson v. State,* 614 S.W.2d 102 (Tex.Cr.App.1981); *Graham v. State,* 643 S.W.2d 920 (Tex.Cr.App.1982)

Appellant in her appeal asserts in one ground of error that the trial judge improperly refused to allow her trial counsel the right to question prospective juror John O. Vennard.

Appellant is correct that the trial judge committed error in refusing to permit trial counsel for appellant the right to question Vennard.

Art. 35.17, part 2, V.A.C.C.P., expressly provides:

In a capital felony case, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. *Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court.* [Emphasis Added].

Art. 35.18, V.A.C.C.P., also provides:

Upon a challenge for cause, the examination is not confined to the answers of the juror, but other evidence may be heard for or against the challenge.

Also see Art. 35.13, V.A.C.C.P.

The above statutes are clearly written. Art. 35.17 is actually an adoption by the Legislature of what was formerly common practice in this state. In his "Special Commentary" to Art. 35.17, Presiding Judge Onion of this Court stated the following: "[T]he common practice of individual voir dire examination of prospective jurors in capital cases where the death penalty is sought has been written into the statutes." The trial judge clearly violated the statute when he refused to allow defense counsel his right to question prospective juror Vennard. Also see *Huffman v. State,* 450 S.W.2d 858, 860 (Tex.Cr.App.1970); *Ortega v. State,* 462 S.W.2d 296, 304 (Tex.Cr.App. 1970); *White v. State,* 629 S.W.2d 701, 706 (Tex.Cr.App.1982); *Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Cr.App.1981).

■ However, this Court has held that the mere refusal by the trial court to permit defense counsel to question a prospective juror in a death penalty case, though error, may be harmless error. *White,* supra; *Vanderbilt,* supra. Whether such error may rise to the level of reversible error depends upon the answer to the following question:

Whether, at the time the State makes its challenge for cause, or at the time the trial judge grants or sustains the State's challenge for cause, the prospective juror has been shown to be absolutely disqualified under *Adams v. Texas,* supra, and *Witherspoon v. Illinois,* supra, i.e., has the juror, through questioning by the prosecuting attorney or the trial court, made it absolutely and unmistakably clear that he would automatically vote against the imposition of the death penalty? Also see *Burns v. Estelle,* supra; *Jurek v. Estelle,* supra.

The record of appeal reflects the following as to the examination of Vennard, and his excusal by the trial court. Vennard initially stated, when the prosecuting attorney examined him, that although it would be very hard for him to give a person death, nevertheless, he would be able to sit on a jury which returned a verdict which would mandate the trial judge assessing the penalty of death. Vennard then stated that although he did not really know whether he could find a person guilty of capital murder, and in turn answer the special issues affirmatively, he would try to fulfill this responsibility if selected to be on the jury. Vennard next said he could reach a fair verdict, including a verdict sentencing someone to death, but he conditioned this statement that such would depend on the circumstances and facts of the case. However, under continued questioning by the prosecuting attorney, Vennard completely changed his position. He stated that he did not "guess" he could give the death penalty in a case, and also stated that he would certainly consider answering one of the special issues in the negative, so that appellant would receive life imprisonment rather than death. Vennard ultimately agreed with the prosecuting attorney's leading questions, by stating that he would always answer at least one of the special issues in the negative, regardless of what the facts might be, to avoid having the death penalty assessed.

After the prosecuting attorney terminated his questioning of Vennard, he moved to challenge Vennard for cause. Before ruling on the challenge, the trial judge questioned Vennard about his feelings and beliefs on the death penalty. Vennard first indicated to the trial judge that he would avoid giving the death penalty, but then backtracked, stating that if the facts were horrible enough, he "guessed" he could return a verdict of guilty. He stated the following: "Well, I mean if it was horrible enough, I guess so. It would be a more severe penalty." Finally, Vennard stated that he would have to say "no" to the question, "Could you in the worst set of facts you could think of ever sit as a juror along with eleven others and return a verdict that would result in death?" After Vennard gave his response, the trial judge *sua sponte* granted the prosecuting attorney's earlier challenge for cause, and excused Vennard. Appellant's trial counsel then requested permission from the trial judge to examine Vennard, "please," but such request and plea were refused: "No, sir, [you may not voir dire Mr. Vennard]."

Our review of Vennard's voir dire examination leads us to conclude that he is what has been described as a "vacillating juror," see *Williams v. State,* 622 S.W.2d 116, 121 (Tex.Cr.App.1981, Teague, J., Dissenting Opinion.), in that he would take one position or stand at one time and then later would take another position or stand, diametrically opposed to the first stand.

In light of Vennard's vacillation, we are unable to state that had appellant's trial counsel been given the opportunity to question him, Vennard would not have returned to his former position, and agreed that he could have found appellant guilty of capital murder and thereafter would have answered in the affirmative the statutory special issues.

▮ Excusing a prospective juror without giving counsel for the defendant an opportunity to question the juror should not ever occur, unless the record affirmatively and unequivocally reflects that the prospective juror would, regardless of the evidence, automatically vote for a verdict that would prohibit the assessment of the death penalty.

In this instance, a clear reading of Vennard's examination by the prosecuting attorney and the trial judge does not reflect such a firm and fixed attitude and position that would have prevented him from reaching or making an impartial decision as to the appellant's guilt, or deciding the submitted statutory special issues fairly. The record reflects that at no time did the trial judge give appellant's trial counsel the opportunity to question venireperson Vennard. We hold that appellant's trial counsel should have been given the opportunity to examine Vennard.* E.g., *Lackey v. State,* 638 S.W.2d 439 (Tex.Cr.App.1982); *Turner v. State,* 635 S.W.2d 734 (Tex.Cr.App.1982); *Pierson v. State,* 614 S.W.2d 102 (Tex.Cr.App.1981); cf. *Porter v. State,* 623 S.W.2d 374 (Tex.Cr.App.1981); *Banks v. State,* 643 S.W.2d 129 (Tex.Cr.App.1983); *Williams v. State,* supra. By failing to give appellant's trial counsel the opportunity to question Vennard, the trial court committed reversible error.

The judgment of the trial court is reversed and the cause remanded.

ONION, P.J., concurs.

W.C. DAVIS, J., not participating.

---

* The appellant also presents four other grounds of error that concern the same issue but involves four other venirepersons. Because of the result we reach in reference to venireperson Vennard, we do not discuss these grounds of error.