**James G. BUFFINGTON, Petitioner,**

v.

**Harlan COPELAND, Sheriff of Bexar County, Respondent.**

Civ. A. No. SA–86–CA–988.

United States District Court,
W.D. Texas,
San Antonio Division.

May 13, 1988.

Mark Stevens and John Hrncir, San Antonio, Tex., for petitioner.

Charles Palmer, Asst. Atty. Gen., Austin, Tex., for respondent.

ORDER

PRADO, District Judge.

The matter before the Court is the Findings and Recommendation of United States Magistrate Robert B. O'Connor, filed December 4, 1986. Owing to the novelty and difficulty of the legal issue raised by this habeas corpus petition, the Court heard oral arguments from the parties on March 15, 1988. After carefully reviewing the arguments of counsel and the relevant case law, the court is of the opinion that the Magistrate's recommendation should be ADOPTED and Petitioner's request for relief DENIED.

Judge O'Connor correctly framed the issue as requiring the Court to resolve whether prosecutorial misconduct, although not resulting in mistrial and not

discovered until after the defendant was convicted, bars retrial of Petitioner under the Double Jeopardy Clause of the Fifth Amendment. Petitioner, James Buffington, was found guilty of capital murder and sentenced to death by a Bexar County jury. His conviction was reversed by the Texas Court of Criminal Appeals on the ground that the trial court erred in excluding two jurors in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968); *Buffington v. State*, 652 S.W.2d 394 (Tex.Crim.App.1983). It is well settled that a *Witherspoon* error does not implicate the Double Jeopardy Clause, *See Id.* 391 U.S. at 521 n. 21, 88 S.Ct. at 1777 n. 21; *Alderman v. Austin*, 695 F.2d 124, 128 (5th Cir.1983), and Petitioner has not claimed that his retrial would be barred under *Witherspoon*. Although three judges on the en banc court in *Buffington* would have reversed the conviction on the grounds of prosecutorial misconduct and barred retrial, the majority decision was based only on the *Witherspoon* error.

In 1982 the United States Supreme Court decided *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416. The *Kennedy* decision narrowed the standard enunciated in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), which allowed a defendant to escape retrial where prosecutorial "overreaching" implicated constitutional rights protected under the Double Jeopardy Clause. Instead, the *Kennedy* standard focuses on the intent of the prosecutor:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. *United States v. Scott*, 437 U.S. 82, 93 [98 S.Ct. 2187, 2195, 57 L.Ed. 2d 65] ... (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, [t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error. *United States v. Dinitz, supra*, 424 U.S., at 609 [96 S.Ct. at 1080] ... Only where the government conduct in question is intended to goad the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

The facts in *Kennedy* differed significantly from the facts in the present case,[1] and courts and commentators have struggled with the question of whether the *Kennedy* standard applies to cases where there is no motion for mistrial and the prosecutorial misconduct is not discovered until after the verdict. *See, e.g., United States v. Singer*, 785 F.2d 228, 238–39 (8th Cir.1986); Ponsoldt, *When Guilt Should Be Irrelevant: Government Overreaching as a Bar to Prosecution Under the Double Jeopardy Clause After Oregon v. Kennedy*, 69 Cornell L.Rev. 76, 78 n. 11 (1983). There are at least three plausible interpretations of *Kennedy's* applicability to Petitioner's circumstances. The State argues that *Kennedy* establishes a per se rule that only bars retrial in the narrow circumstances where a mistrial has actually occurred and the prosecutor has goaded the defendant into making the motion. A second possibility is that the rationale behind *Kennedy* must be applied to Petitioner's circumstanc-

---

1. In *Kennedy,* the defendant was charged with the theft of an oriental rug. During his first trial, the state called an expert witness on the subject of Middle Eastern rugs to testify as to the value and the identity of the rug in question. On redirect examination, the prosecutor sought to elicit the reasons why the witness has filed a complaint against the defendant, but the trial judge sustained a series of objections to this line of inquiry. The following colloquy then ensued:

'Prosecutor: Have you ever done business with the Kennedys?
Witness: No I have not.
Prosecutor: Is that because he is a crook?' The trial court then granted the defendant's motion for a mistrial. 456 U.S. at 669, 102 S.Ct. at 2086.

es and the reviewing court must ask whether the prosecutor's conduct was motivated by an intent to goad a mistrial or deny the defendant of his double jeopardy protections. A third possibility advanced by Petitioner is that a new test is required and he proposes the "Buffington" test whereby the Double Jeopardy Clause would bar retrial if (1) the prosecutor's conduct was sufficiently egregious; and (2) a sufficient likelihood existed that the first trial would have proceeded to acquittal absent the prosecutorial misconduct.

The Court rejects the Attorney General's suggested interpretation of *Kennedy* as overly narrow. The State's interpretation of the *Kennedy* decision would summarily reject Petitioner's claim solely on the grounds that the prosecutorial misconduct was not discovered until after a conviction. Several courts and commentators have observed that the applicability of the Double Jeopardy Clause should not turn on what stage in the proceedings error is discovered. *E.g., Robinson v. Wade,* 686 F.2d 298, 306–7 (5th Cir.1982); *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918, 921 (1978); *Comment, Commonwealth v. Wallace,* 500 Pa.

270, 455 A.2d 1187 (1983), 22 Duquesne L.Rev. 549, 564 (1984). The Court agrees that the Double Jeopardy Clause should not be so mechanically applied and therefore rejects the State's position.

The Court must also reject the interpretation of *Kennedy* offered by Petitioner's counsel. At oral argument counsel was quite candid in admitting that his proposed two pronged standard required an extension of existing case law. In light of the *Kennedy* court's retreat from the overreaching standard which governed prosecutorial misconduct under *Dinitz,* this Court is constrained to deny Petitioner's interpretation. The Court finds that the spirit of *Kennedy,* if not the letter, precludes a double jeopardy test which examines the egregiousness of the prosecutor's misconduct.

Rejection of these two conflicting interpretations of *Kennedy* leaves the middle ground of attempting to apply the *Kennedy* test outside the context of a successful motion for mistrial. Despite the Court's reservations about the wisdom of applying this test where no mistrial is involved,[2] and

---

**2.** The mistrial remedy may not be applicable in this case. Although it is indeed impossible to predict precisely what would have occurred during Mr. Buffington's first trial had the prosecutorial misconduct been discovered, the Court is of the opinion that the defendant would not have requested a mistrial and the trial court would not have granted one, had one been requested. As the Court will later discuss, what was involved here was essentially a *Brady* violation. If Petitioner's trial counsel became aware of the prosecutorial chicanery after the testimony of Mr. Moore, the appropriate course would have been to compel the prosecutor's production of the entire unexorcised statement and to allow counsel to further cross-examine the witness. Even if a mistrial might have been appropriate, the Court doubts that any defense lawyer would have allowed the prosecutor a second chance at presenting the case before a jury which had not directly witnessed the dishonesty of the State. *See United States v. Tateo,* 377 U.S. 463, 474, 84 S.Ct. 1587, 1593, 12 L.Ed.2d 448 (1964) (Goldberg, J., dissenting) ("Many juries acquit defendants after trials in which reversible error has been committed, and many experienced trial lawyers will forego a motion for a mistrial in favor of having his case decided by the first jury.") The Court is aware, however, of one case involving a *Brady* violation where a mistrial was declared. In *Sedgwick v. Superior Court for the District of Columbia,* 584 F.2d 1044

(D.C.Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 849, 59 L.Ed.2d 42 (1979), the prosecution failed to reveal to the defense the existence of a barroom confession from a different individual. Although the appellate court ruled that the tip constituted mere street rumor and was not *Brady* material, the trial court declared a mistrial in order to allow the defense time to determine the identity of the confessing individual. *Sedgwick* is distinguishable from the present case because defense counsel here would not have needed a one month recess to investigate the identity of a new fact witness. Instead, the Court believes that a short recess would have enabled trial counsel to read the complete transcript and conduct further cross-examination of Mr. Moore and perhaps the prosecutor himself. In this sense, then, the Court does not think that mistrial was an appropriate remedy in Mr. Buffington's first trial, even if the prosecutorial misconduct had been discovered. Furthermore, since the Court determines that Petitioner probably would not have moved for a mistrial and if he had the trial court probably would have denied the motion, it cannot be said that Mr. Buffington lost his valued right to maintain control over the course to be followed in his first trial. The Court declines to adopt the Magistrate's finding to the contrary. *See,* Findings and Recommendation of United States Magistrate at 20, citing *Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089.

the Court's appreciation of Justice Stevens' criticism of an intent based test, *see*, 456 U.S. at 688–690, 102 S.Ct. at 2096–97, the Court will nevertheless attempt to apply *Kennedy* to the facts of this case.

Notwithstanding this Court's reservations about applying the *Kennedy* test to a factual situation where no mistrial motion was made, or quite possibly could have been made, the Court will attempt to apply the *Kennedy* test in light of two subsequent decisions from the Fifth Circuit Court of Appeals. This Court has once before analyzed the significance of *Robinson v. Wade*, 686 F.2d 298 (1982), and will not reiterate the facts of that case. The *Robinson* court did not resolve the particularly thorny question of whether the *Kennedy* test applied to situations where a mistrial was not declared. Instead, the Court declined to resolve the reach of the reprosecution bar because it found that the type of prosecutorial misconduct involved in *Robinson* was not the same type of overreaching preclusive of retrial under *Oregon v. Kennedy*. The *Robinson* court held:

> Though uncertainty reigns elsewhere, the principles governing examination of a claim of prosecutorial overreaching are in the wake of *Kennedy* clear. Double jeopardy will bar reprosecution only if analysis of objective facts and circumstances, *Kennedy* 102 S.Ct. at 2089, shows that the conduct in question was intended to provoke a motion for mistrial, *Kennedy* 102 S.Ct. at 2091. A finding that the Government's acts do not amount to intentional misconduct is a finding of fact; ... as such, it will not be set aside unless shown to have been clearly erroneous. ... And only if overreaching is found will inquiry into whether the defendant suffered prejudice be made ... Hard blows, intended to improve the chances of obtaining a conviction, do not demand the remedy designed for foul ones to provoke a retrial. *United States v. Fine*, 644 F.2d 1018, 1023 (5th Cir.1981), *cert. denied*, 454 U.S. 1097 [102 S.Ct. 669, 70 L.Ed.2d 638] (1982). ... On the facts here presented there occurred no prosecutorial overreaching suf-

ficient to bar Robinson's retrial. His plea of preclusion under the double jeopardy clause must be denied.

■ The Court interprets this passage from *Robinson* as establishing a two-prong test to determine whether prosecutorial misconduct will bar retrial under the Double Jeopardy Clause. First, the Court must determine whether the prosecutorial misconduct is of the type prohibited by *Oregon v. Kennedy.* Second, if the prosecutorial overreaching is of the same kind, the Court must then determine whether the defendant was prejudiced by the misconduct.

Although the Court directed Judge O'Connor to make a finding regarding the sufficiency of the evidence to support Mr. Buffington's first conviction absent the prosecutional misconduct and whether the misconduct therefore had an implication for Petitioner's guilt or innocence, upon reflection, this Court now considers that inquiry as only relevant to the second prong of the *Robinson* test. It is therefore unnecessary for this Court to review the contested finding of the Magistrate that "the remainder of the evidence ... exclusive of that of Moore ... would have been sufficient, albeit circumstantial, to support a verdict of guilty." Magistrate's Findings at 24. This conclusion is relevant to the inquiry under *Brady* of whether the information concealed by the prosecutor was "material."

■ Similar to the decision of the *Robinson* court, this Court determines that the prosecutorial misconduct in this case, however shocking and deplorable, does not bar retrial under *Oregon v. Kennedy.* This Court declines to adopt the Magistrate's finding that Mr. Conaway sought to deprive Petitioner of the right "to retain primary control over the course to be followed" in his trial. Furthermore, although the Court declines to adopt the per se rule advocated by the Attorney General and agrees with Petitioner that the Court should generally inquire whether the prosecutor's misconduct was designed to deny Petitioner's rights under the Double Jeopardy Clause, in this case, Petitioner's right

to determine the course of the first trial was not at stake.

In *United States v. Curtis,* 683 F.2d 769, 777 (3d Cir.1982), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982) the court determined that a prosecutor's reference in final argument to defendant's failure to notify police at his first interview of the entrapment defense, in direct contravention of a specific order of the trial court, was not the type of misconduct which could be redressed by *Kennedy.* The *Curtis* court reasoned that the intent of the prosecutor could be determined by the circumstances existing at the time the misconduct occurred. The *Curtis* court found the trial court's ruling barring retrial clearly erroneous because:

> In view of the failure of both the defense counsel and the trial judge to recognize immediately the need for a mistrial, it is difficult to credit the premise that the prosecutor could not have committed such conduct without knowing and intending that a mistrial would result. We mean in no way to excuse the conduct of the prosecutor; we note only that, based on the recorded observations and reactions of persons involved at the time, the conduct did not, in the context of that trial, obviously require a mistrial. An inference of an intent to provoke a mistrial based solely on this alleged obviousness cannot be sustained in view of the record.

*Id.* at 777.

Similarly, in this case, the prosecutor's conduct cannot be interpreted as provocative of a mistrial because the mistrial remedy in all likelihood would not have been requested or available. *See* footnote 2, *supra.* Instead, as agreed upon by both parties, the prosecutor in this case was motivated by a desire to "excise any trace of plea bargain discussions with Moore [and] not to goad Petitioner into moving for mistrial.... The prosecutor's motivation, as explained by the Respondent, was apparently to prevent the jury from learning that promises of leniency had been made to Moore, the prosecution star witness, because he believed that it would be less

willing to credit Moore's testimony if it were aware of such promises.... the prosecutor further intended to prevent Petitioner and his attorney from detecting his reworking of the transcription and to thereby divest Petitioner not only of his right to have his guilt or innocence determined by the first jury, but he likewise sought to deprive Petitioner of the right to retain primary control over the course to be followed in his trial." Magistrate's Findings at 19–20.

In fact, Petitioner's guilt was determined by the first jury and as the Court has previously explained, he did not lose primary control over the course to be followed. The findings of the Magistrate and the circumstances of the misconduct suggest that Mr. Conaway's deplorable actions were motivated by a more general desire to prejudice the defendant and obtain a conviction. It is well settled under *Kennedy,* however, that a general desire to prejudice the defendant or obtain a conviction will not bar retrial under the Double Jeopardy Clause. *United States v. Singleterry,* 683 F.2d 122, 123 n. 1 (5th Cir.1982), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed. 2d 518 ("to the extent that language in our prior opinions interprets the Supreme Court's pre-*Kennedy* decisions to establish a more expansive double jeopardy bar—i.e., that reprosecution is barred by any 'grossly negligent' or intentional misconduct that 'seriously prejudices' the defendant ...— that language is no longer the law. Under *Kennedy,* gross negligence is clearly not enough to bar retrial.... Nor is it enough that the prosecutor intends to seriously prejudice the defendant's chances of an acquittal."); *See also United States v. Curtis,* 683 F.2d at 776.

This is not to accept, however, the narrow per se approach that *Kennedy* can never apply to a situation where a motion for mistrial is not made or is unsuccessful. Nor does the Court accept Petitioner's argument. Although there is dicta in *Robinson* which could be read to support the position of Petitioner, since much of that language cites the concurring opinion of Justice Stevens, this Court is not bound to follow it. Furthermore, the *Robinson*

court quoted the Supreme Court's recent decision in *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) in explaining the interests protected by the Double Jeopardy Clause:

> Neither *Burks* nor subsequent cases imply diminution of the significance attached to the interest protected by the prosecutorial overreaching exception. In its recent decision of *Tibbs,* the court explained that '*Burks* ... implement(s) the principle that (t)he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.' *Burks, supra* 431 U.S. [1] at 11 [97 S.Ct. at 1512] ... This prohibition, lying at the core of the clause's protection, prevents the state from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance. 686 F.2d at 308.

Although the *Robinson* court later noted that "the interest in denying the Government 'that forbidden second crack', ... would seem equally to be infringed by oppressive prosecutorial tactics designed to avoid acquittal as by retrial following acquittal for insufficiency of evidence." *Id.,* the Court's reliance on *Burks, supra; Tibbs, supra; United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); and *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) suggest that prosecutorial misconduct will only bar retrial where the prosecutor is seeking a second opportunity to convict the defendant and will be able to present a stronger case in a second proceeding.[3] Accordingly, this Court does not believe these interests are implicated in Mr.

Buffington's case. There is nothing in the record to suggest that Mr. Conaway was seeking a more favorable judicial forum when he engaged in the misconduct noted. Moreover, it is difficult to imagine that the government in this case will be advantaged in a second trial. If anything, the government's case may be significantly weaker due to the lapse of time and the fact that defendant will be able to effectively cross-examine Mr. Moore. For all these reasons the Court concludes that Petitioner's case does not fall within that narrow class of cases where retrial may be barred.

Only one month after *Robinson v. Wade,* the Fifth Circuit Court of Appeals decided *United States v. Singleterry,* 683 F.2d 122 (1982). This decision by a different panel of the Fifth Circuit does not mention *Robinson* and it is somewhat difficult, at least for this Court, to harmonize the two opinions. Although *Singleterry* is somewhat distinguishable in that defendant there made an unsuccessful motion for mistrial and later had his conviction reversed by the appellate court on the grounds of prosecutorial misconduct, the decision does seem to limit the reach of the *Kennedy* exception. The *Singleterry* Court also believed the *Kennedy* exception was limited to cases where the prosecutor was seeking a more favorable environment for a conviction in the second proceeding. The Court noted:

> .... Under *Kennedy* the Double Jeopardy Clause is concerned only with prosecutorial misconduct that is intended to provoke a mistrial. When a mistrial is not declared, then the prosecutor's effort have been unsuccessful. The dangers that the *Kennedy* exception was intended to prevent—that the defendant might lose his valued right to complete his trial before the first jury, and that the prosecutor might be seeking a more favorable opportunity to convict...—are more at-

---

**3.** In *Robinson* itself, Petitioner invoked the Double Jeopardy Clause in an unsuccessful attempt to prevent his fourth trial. Robinson's first conviction was reversed because the prosecutor improperly attempted to bolster a witness' testimony by use of a polygraph; his second conviction was reversed on the unstated ground that the jury improperly considered the prosecutor's sug-

gestion that Robinson's testimony contradicted earlier testimony he had given in a competency hearing; his third conviction was reversed because the court reporter had lost part of her notes and could not prepare a complete transcript for appellate review. 686 F.2d at 301–302.

tenuated when the defendant is convicted by the first jury but an appellate court reverses for prosecutorial misconduct. In such a case, the defendant has not lost his chance for an acquittal by the first jury, and it seems unlikely that any prosecutor would intentionally lay a basis for appellate reversal in order 'to subvert the protections afforded by the double jeopardy clause.' *Id.* at 124 (citations omitted).

In this Court's earlier order granting Petitioner's preliminary injunction barring his retrial, the Court directed the Magistrate to answer the question of whether Mr. Buffington had lost his chance for an acquittal by the first jury. It is indeed arguable that since the misconduct here was undiscovered and the prosecutor's concealment may have affected the credibility of a key witness, that Petitioner did not have fair chance for acquittal before his first jury. In fact, the Magistrate concluded that Petitioner "did not receive a fair trial inasmuch as the prosecutor altered the transcription and, consequently, eliminated any chance of acquittal." Magistrate's Finding at 17. Although the Court did direct the Magistrate to undertake a sufficiency of the evidence analysis, it now believes that such an analysis was unnecessary to the decision. As long as the prosecutor's misconduct was not motivated by the intent to obtain a more favorable opportunity to convict in a retrial, the interests protected by the Double Jeopardy Clause are simply not implicated. *See United States v. Singleterry,* 683 F.2d at 125 ("The evidence against the defendants ... was strong and simple ... The record makes it clear that the prosecutor did not need a 'more favorable opportunity to convict.' ... The prosecutor was merely attempting—however improperly—to ensure the conviction of the defendants in their first trial. Under *Kennedy,* such an attempt does not violate the Double Jeopardy Clause."). The Court has already found that Mr. Conaway was not seeking "a mere favorable opportunity to convict."

Accordingly, this Court need not address Petitioner's objections to the Magistrate's Findings which challenge the sufficiency of the evidence analysis. The analysis of the state of the evidence is certainly relevant under *Brady v. Maryland,* as the Court will later discuss, but it is not necessary for the double jeopardy analysis. In effect, the Magistrate's finding constitutes an affirmative response to the second prong of the *Robinson* test—that Petitioner was prejudiced by the prosecutorial misconduct. But since this court finds that the first prong of *Robinson* was not satisfied—that the conduct was intended to provoke a motion for mistrial and give the prosecution a more favorable opportunity to convict, the second prong of *Robinson* need not be reached.

The foregoing analysis should make clear the difficulty of applying *Kennedy's* holding to the facts in this case. Judge O'Connor correctly identified the prosecutor's misconduct in Petitioner's first trial as a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* rather than *Kennedy* may well be the more appropriate analytical vehicle for this case. Most decisions discussing prosecutorial misconduct involve situations where prosecutors attempt to inject prejudice into the trial—by introducing inadmissible evidence, making inappropriate statements during opening and closing statements, and the like. *See generally,* Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure,* 135 U.Pa.L.Rev. 1365, 1421–22 (1987). In this case, however, unlike *Kennedy,* the prosecutorial misconduct was an act of omission—Mr. Conaway's failure to reveal impeachment testimony[4] of a leading state witness and his failure to notify the court or opposing counsel of perjured testimony by Moore.

The Court adopts Judge O'Connor's careful analysis of the *Brady* doctrine:

In *Brady, supra,* the Supreme Court held that the suppression of evidence fa-

---

**4.** Since *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), a defendant is also entitled to receive evidence that could discredit prosecution witnesses.

Thus *Brady* material includes impeachment evidence and exculpatory evidence which affirmatively negates a defendant's guilt or tends to reduce punishment.

vorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or the bad faith of the prosecution. The rule of *Brady* applies in three different situations, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), two of which are present in this case. The first situation obtains when the prosecution achieves a conviction through the use of materially false or perjured testimony. *Agurs*, 427 U.S., at 103, 104, 96 S.Ct., at 2397–2398. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765 [31 L.Ed. 2d 104] (1972) *citing Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177 [3 L.Ed.2d 1217] (1959).

In this situation, a strict standard of materiality is applied, *Agurs*, 427 U.S., at 104, 96 S.Ct., at 2397; that is, the false testimony is material—and a new trial is required—if it could "in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S., at 154, 92 S.Ct., at 766, *quoting Napue v. Illinois*, *supra*, 360 U.S., at 721, 79 S.Ct., at 1178. Clearly, Moore's testimony that he had never had plea bargain discussions with the prosecution was false, and was allowed to go uncorrected by the prosecutor.

Not only was Moore's false testimony allowed to stand, the prosecutor took affirmative steps to insure that evidence which could have impeached Moore was concealed. This type of failure to produce evidence presents the second *Brady* situation, i.e., the defense counsel requests specific exculpatory evidence and the prosecution is totally unresponsive and behaves as if the evidence does not exist. *United States v. Agurs*, 427 U.S., at 104–106, 96 S.Ct., at 2397–2398. The undisclosed, requested information is material—and the non-disclosure requires a new trial—where the suppressed evidence might have affected the outcome of the trial.

The major focus of Petitioner's defense at trial was upon the credibility of Moore, the state's star witness. In fact, no other defense was pursued. Had the jury been apprised of Moore's plea bargain discussions with the prosecutor, the jury could easily and legitimately have inferred that Moore was less motivated by the truth or by altruistic motives of truth and sympathy for the victim than by a sincere desire to do whatever-it-takes to assure leniency from the prosecution at the time of his trial. There is an eminently reasonable likelihood that the judgment of the jury would have been affected by knowing about Moore's plea bargain talks with the prosecutor. *See Commonwealth v. Wallace*, 455 A.2d 1187, 1192–1193 (Pa.1983).

Thus, even though *Brady* and the other cited cases were framed in due process terms, it is obvious from their holdings that the type of misconduct engaged in by the prosecutor here definitely holds an implication for the guilt or innocence of Petitioner. However, whether or not it warrants the extreme remedy sought by Petitioner is an altogether different question. For reasons set out below, it is the conclusion and therefore the recommendation of this Magistrate that the answer to that question is in the negative. Magistrate's Findings at 21–23.

At this point the Magistrate sought to determine if the remainder of the evidence presented during Petitioner's first trial, exclusive of the testimony of Charles Moore, would have been insufficient to support a verdict of guilty. Examination of the third *Brady* situation, not present in this case, renders the sufficiency of the evidence analysis unnecessary.

A third violation of *Brady* occurs in the situation where the prosecutor fails to disclose generally requested or unrequested evidence. *United States v. Agurs*, 427 U.S. 97, 104–06, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976). In this third *Brady* situation reversal of a defendant's convic-

tion is only warranted where the undisclosed evidence meets an extremely stringent materiality test. Only where the undisclosed evidence "create[s] a reasonable doubt that did not otherwise exist"[5] will a new trial be ordered. *Id.* at 112, 96 S.Ct. at 2401; *see also, Lindsey v. King,* 769 F.2d 1034, 1041 (5th Cir.1985); *Carey v. Duckworth,* 738 F.2d 875, 877 (7th Cir.1984).

Thus, assuming arguendo that Petitioner's objections have merit and that the State's evidence would have been legally insufficient to convict Mr. Buffington at his first trial, his retrial would not be barred by the Double Jeopardy Clause. Instead the appropriate remedy in this third *Brady* situation is to reverse the defendant's conviction and to order a new trial. *See, e.g., United States v. Agurs,* 427 U.S. at 112–13, 96 S.Ct. at 2401–02; *United States v. Barnham,* 595 F.2d 231, 241–243 (5th Cir. 1979) (conviction reversed and new trial ordered where prosecution allowed false testimony regarding leniency discussions with key witness to go uncorrected); *Cannon v. Alabama,* 558 F.2d 1211, 1215–16 (5th Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1281, 55 L.Ed.2d 792, (conviction reversed and new trial ordered where prosecution failed to identify existence of witness who identified individual other than defendant as culprit in murder case); *United States v. Beasley,* 576 F.2d 626, 630 (5th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), (only if evidence not disclosed would create reasonable doubt which otherwise did not exist would new trial be ordered).

**5.** Although the materiality standard has been modified in *United States v. Bagley,* this modification is not relevant to the Court's analysis.

**6.** This Court finds the *Wallace* decision to be inconsistent with *Oregon v. Kennedy. See also,* Comment, *Commonwealth v. Wallace,* 22 Duquesne L.Rev. 549, 565 (1984). Furthermore, the *Wallace* court did not analyze the prosecutorial misconduct there as a *Brady* violation.

**7.** *But cf.,* Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure,* 135 U.Pa.L.Rev. 1365, 1404–14 (1987) (arguing that the bad faith conduct of a prosecutor still makes a difference in determining whether the evidence suppressed is material). For this Court's purposes, however,

Indeed, Petitioner's counsel cannot cite a single case where the remedy for a *Brady* violation was a retrial bar and the Court has not been able to locate one. *But cf., Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (Pa.1983) (holding that undisclosed impeachment evidence if presented to the jury could have raised reasonable doubt such that retrial should be barred under Double Jeopardy Clause).[6] A search of cases applying the "creating a reasonable doubt" materiality test, which governed the third *Brady* situation from *Agurs* in 1976 until the *Bagley* decision in 1985 reveals no decisions supporting Petitioner's position.

Petitioner attempts to distinguish *Brady* at oral argument on the sole grounds that this case involves egregious prosecutorial misconduct. *Brady* itself, and several Supreme Court cases interpreting *Brady,* have stated, however, that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97; *accord, Smith v. Phillips,* 455 U.S. 209, 220 n. 10, 102 S.Ct. 940, 947 n. 10, 71 L.Ed.2d 78 (1982) ("the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes."); *United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) ("[i]f the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.")[7]

this criticism is not important because once a court determines that the suppressed evidence is material, the good or bad faith of the prosecutor has no bearing on the ultimate outcome. *Talamante v. Romero,* 620 F.2d 784, 788 (10th Cir. 1980), *cert. denied,* 449 U.S. 877, 101 S.Ct. 223, 66 L.Ed.2d 99, ("although the good faith or bad faith of the prosecutor is irrelevant if the evidence is material, the good faith or bad faith of the prosecutor may well bear on the materiality determination.") Since there can be no question in this case that the evidence suppressed by Mr. Conaway was material in a *Brady* sense, his bad faith would be irrelevant and not a ground for distinguishing *Brady.*

Any doubt concerning the propriety of ordering Mr. Buffington to stand retrial should be resolved by the Fifth Circuit Court of Appeals' decision in *Cannon v. Alabama.* If anything, the prosecutorial misconduct in *Cannon* was more egregious than the misconduct in Petitioner's first trial. Nevertheless, the *Cannon* court ordered a new trial after reversing the conviction.

The defendant in *Cannon* was convicted of second-degree murder for a shooting which occurred at a Birgmingham, Alabama service station. The sole issue at trial was the identity of the assailant. Only two eye witnesses could identify Cannon as the assailant, and their testimony was inconsistent. No less than thirteen witnesses provided an alibi for Cannon and placed him at a card game at the time of the shooting. Furthermore, five additional witnesses who were at the service station during the shooting testified that they saw the assailant and that they knew that Cannon was not the triggerman, although they could not make a positive identification. Despite the obvious weakness of the prosecution's case, the jury convicted Cannon of murder. The prosecution also failed to reveal the existence of an eye-witness who positively identified the assailant as someone other than Cannon.

In reversing the conviction and ordering a new trial, the *Cannon* court wrote:

It is against this background that we must assess the evidence the prosecutor withheld from the defense. That evidence was the testimony of Gracie Mae Sherrod. She said she was buying gas at the service station when the beige car pulled in. There were two blacks in the car. The passenger got out and spoke to Sherrod. She recognized him as Robert Daniels. She also knew Cannon but did not see him at the station that night.

On the night of the shooting, Sherrod provided this information to a Birmingham police detective. She showed the detective where Daniels lived. The detective made notes. Sherrod heard nothing further about the crime until after

Cannon's conviction. Only then did the defense learn of Sherrod.

This undisclosed information clearly warrants reversal under the *Agurs* standard. As the Court emphasized, 'The proper standard ... must reflect our overriding concern with the justice of the finding of guilt.' *United States v. Agurs,* 427 U.S. at 112 [96 S.Ct. at 2401] ... In the case at bar the 'justice of the finding of guilt' was subject to considerable doubt even without the *Agurs* violation. Sherrod's eyewitness testimony positively identifying the passenger said to have committed the crime undoubtedly 'creates a reasonable doubt that did not otherwise exist.' 427 U.S. at 112 [96 S.Ct. at 2401]. As the Court said in *Agurs,* 'if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' 427 U.S. at 113 [96 S.Ct. at 2402]. Here the verdict was already of questionable validity, and the additional evidence is of relatively major importance. Indeed, our situation is so extreme that it approaches hypotheticals that have been used to demonstrate instances clearly requiring prosecutors to disclose. See *Ross v. Texas,* 474 F.2d 1150, 1154 (5th Cir.1973) (conviction would be invalid if prosecutor had withheld "an eyewitness ... who would have testified that [defendant] was not the robber"); Comment, *Brady v. Maryland and the Prosecutor's Duty to Disclose,* 40 U.Chi.L.Rev. 112, 125 (1972), quoted with approval, *United States v. Agurs,* 427 U.S. 97, 112 n.21, 96 S.Ct. 2392, 2402 n.21, 49 L.Ed.2d 342, 355 N.21 (1976).... If the prosecutor's failure to disclose exculpatory information can ever invalidate a conviction, it does so in this case. 558 F.2d at 1215–16.

If the undisclosed witness had testified at Cannon's first trial, an already weak prosecution case would have been further undermined. Indeed the prosecution's case in *Cannon* quite clearly was far weaker than the prosecution's evidence in the instant case. For this reason alone the Court need not analyze Petitioner's argument that the evidence, exclusive of Moore's tes-

timony, was legally insufficient to support a verdict of guilty. Even if this were the case, a new trial is the appropriate remedy for this type of *Brady* violation. *See also, United States v. Barnham, supra.*

This seemingly harsh rule allowing retrial in the most egregious situations—where the prosecutor knowingly conceals exculpatory or impeachment evidence which would raise a reasonable doubt which otherwise did not exist—is supported by an underlying rationale. The double jeopardy implications of a *Brady* violation were specifically addressed by the Court of Appeals for the District of Columbia in *Sedgwick v. Superior Court for the District of Columbia,* 584 F.2d 1044, 1049–50 (1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 849, 59 L.Ed.2d 42 (1979):

> A dismissal on *Brady* grounds is not a holding that 'the Government ha[s] not produced sufficient evidence to establish the guilt of the defendant.' *United States v. Scott,* 98 S.Ct. at 2195. The central teaching of *Scott* is that a dismissal does not bar government appeal and retrial unless it is premised on some factual determination of the insufficiency of evidence of defendant's guilt. While access to *Brady* material might establish innocence, or more accurately might raise a reasonable doubt as to defendant's guilt, a dismissal pursuant to *Brady* does not itself negative criminal responsibility. In this critical aspect, it is similar to the dismissal for prejudicial preindictment delay in *Scott.* A dismissal or mistrial ruling predicated on *Brady* and granted on defendant's motion is, therefore, answerable to appellate review and does not bar retrial if the appellate court finds no *Brady* violation.[8] (footnotes omitted).

In this case there has been no factual determination that the evidence presented in Petitioner's first trial was legally insufficient to support a finding of guilt. More-

over, even if this Court accepts Petitioner's theory that the testimony of Charles Moore was the cornerstone of an evidentiary pyramiad and that without Moore's testimony the entire case against Petitioner would have collapsed, such a determination would not constitute a finding that Mr. Buffington was not criminally culpable for the crime charged. Petitioner concedes that there was other evidence linking him to the murder but argues that this evidence would have been inadmissible absent Moore's testimony. A long line of Supreme Court cases "emphasize the centrality of the culpability principle." *Sedgwick,* 584 F.2d at 1040 n.16, *citing, e.g., Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Finch v. United States,* 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Scott,* 437 U.S. 82, 98 n.11, 98 S.Ct. 2187, 2197 n.11, 57 L.Ed.2d 65 (1978) ("While an acquittal on the merits by the trier of fact 'can never represent a determination that the criminal defendant is innocent in any absolute sense,' ... a defendant who has been released by a court for reasons required by the Constitution or laws, but which are unrelated to factual guilt or innocence, has not been determined to be innocent in any sense of that word, absolute or otherwise. In other circumstances, this Court has had no difficulty in distinguishing between those rulings which relate to 'the ultimate question of guilt or innocence' and those which serve other purposes. *Stone v. Powell,* 428 U.S. 465, 490 [96 S.Ct. 3037, 3050, 49 L.Ed.2d 1067] (1976)."); *see also,* Cover & Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court,* 86 Yale L.J. 1035, 1086–1100 (1977) (discussing evolving doctrine that only constitutional claims bearing on prisoner's innocence should be cognizable in habeas corpus proceedings, and not claims, such as those predicated on the

---

8. Notwithstanding the last sentence of this quoted passage, the Double Jeopardy Clause does not bar retrial even where an appellate court determines that there *was* a *Brady* violation. The rest of the *Sedgwick* opinion makes clear that a finding of a *Brady* violation is not tanta-

mount to a finding that the evidence against the defendant was legally insufficient or that the defendant was not criminally culpable. Furthermore, other appellate courts finding *Brady* violations have not barred retrials. *See, e.g., Barnham, supra; Cannon, supra.*

Fourth Amendment exclusionary rule, which are the products of concerns about legal administration).

In short, even if it were this Court's role to evaluate the sufficiency of the State's evidence at Petitioner's first trial, absent the tainted testimony of Charles Moore, and even if this Court were to accept Petitioner's argument that Moore's testimony was the cornerstone of the State's case, the Double Jeopardy Clause would not bar Petitioner's retrial. Any such finding would be "unrelated to factual guilt or innocence" and Petitioner could not be determined to be "innocent in any sense of that word."

The Supreme Court's double jeopardy jurisprudence establishes an important dichotomy between reversals based on "trial error" and those based on "insufficiency of the evidence." Only in the later case will retrial be barred by the Double Jeopardy Clause. This principle was explained in *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978):

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.

This important principle was reiterated by the Supreme Court in *Oregon v. Kennedy*, 456 U.S. at 676 n. 6, 102 S.Ct. at 2090 n. 6:

> [t]his Court has consistently held that the Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of insufficiency of the evidence.

See also, *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

While three judges on the Texas Court of Criminal Appeals would have reversed Petitioner's conviction for prosecutorial misconduct, *Buffington v. States*, 652 S.W.2d 394, 396 (Tex.Crim.App.1983) (Clinton, J., dissenting), the conviction was reversed for *Witherspoon* error, rather than prosecutorial misconduct. In effect, Petitioner argues that the Texas Court of Criminal Appeals *should* have reversed his conviction for prosecutorial misconduct and once having done so, a review of the other evidence reveals that it was legally insufficient to support a conviction.

In the Court's view, *Tapp v. Lucas*, 658 F.2d 383 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982), slams the door on this rather attenuated contention. In *Tapp*, the defendant was convicted of manslaughter of his wife's two-year-old son by a Mississippi jury. The defendant's wife was compelled to testify against her will and gave critical testimony against Tapp implicating him in the crime. The Mississippi Supreme Court reversed the conviction on the grounds that defendant's wife should not have been forced to testify against him. In reversing the conviction, the Mississippi Supreme Court remarked:

> [w]ithout the wife's testimony, the record on the first trial of this case would not sustain a conviction. However, since that testimony is incompetent, the case will be reversed and remanded for a new trial upon such other evidence as the State may be able to present.

*Tapp v. State*, 347 So.2d 974, 977 (Miss. 1977).

On remand, Tapp was again indicted and tried for murder, even though the first jury had found him guilty only of manslaughter.[9] By the time of his second trial, Tapp

---

9. The Mississippi Supreme Court reversed the murder conviction because the first jury had only convicted defendant of manslaughter. The

Fifth Circuit Court of Appeals affirmed the decision to resentence Tapp only of manslaughter as

and his wife were divorced, and Mrs. Tapp willingly testified against her ex-husband. The jury found Tapp guilty of murder. Tapp appealed to the Mississippi Supreme Court on double jeopardy grounds, arguing that his reprosecution was barred because his first conviction had been reversed for insufficiency of the evidence. The Mississippi Supreme Court rejected this contention, stating that, despite language used in its earlier opinion, the reversal was based upon the trial court's error in compelling Mrs. Tapp's testimony, rather than insufficiency of the evidence. *Tapp v. State,* 373 So.2d 1029, 1031 (Miss.1979).

Tapp's federal habeas corpus petition again raised the double jeopardy issue. Although the federal district court granted the writ, the Fifth Circuit reversed, holding that the state appellate court's characterization of its decision conclusively determined whether the first conviction was reversed for trial error rather than insufficiency of the evidence:

> Under the *Burks* line of cases, however, reversal for insufficient evidence is to be distinguished from reversal for trial error. The Court made clear in *Burks* and its companion case, *Greene v. Massey,* 437 U.S. 19, 25–26, 98 S.Ct. 2151, 2155, 57 L.Ed.2d 15, 22 (1978), that where convictions are based on errors made in the course of the trial rather than on the government's failure to offer sufficient proof to sustain the conviction, the double jeopardy clause does not preclude retrial. Neither *Greene* nor *Burks* decided the more difficult question whether a second trial is improper when the legally competent evidence at the first trial was insufficient to sustain a conviction. See *Greene v. Massey, supra,* 437 U.S. at 26 & n. 9, 98 S.Ct. at 2155 & n. 9, 57 L.Ed.2d at 22 & n. 9.

Tapp seeks to raise in this case the issue pretermitted in *Burks* and *Greene.* He notes the Mississippi Supreme Court's statement that '[w]ithout the wife's testimony, the record on the first trial of this case would not sustain a conviction', ... and concludes that his

"a common sense solution to the problem of

conviction was reversed because the legally competent evidence was insufficient. In remanding Tapp's case for the second time, however, the Mississippi Supreme Court observed that the first reversal 'was based on trial error and not insufficiency of evidence'. *Tapp v. State,* 373 So.2d 1029, 1031 (Miss.1979). *Under Fifth Circuit precedent in Greene v. Massey, this dictum is conclusive evidence that the first reversal was based on trial error.* The Supreme Court remanded *Greene* to this court because it was not clear whether the Florida Supreme Court had reversed Green's conviction for trial error or for evidentiary insufficiency. *See Greene v. Massey, supra,* 437 U.S. at 26–27, 98 S.Ct. at 2155, 57 L.Ed.2d 221, 224 (5th Cir.1979) ('[s]ince no one is better equipped to interpret its decision than the Court that rendered it, we find that this case is one that is particularly appropriate for certification.') Following *Greene,* we also defer to the state court's characterization of its previous opinion. Because the Mississippi Supreme Court made clear that Tapp's first conviction was reversed for trial error, the issue pretermitted by *Burks* and *Greene* is not presented in this case, and Tapp's second trial was not precluded by the double jeopardy clause. 658 F.2d at 385. (emphasis added).

This Court finds that Mr. Buffington's attempt to invoke the Double Jeopardy Clause to bar his retrial is weaker than the defendant's claim in *Tapp v. Lucas.* There was no appellate finding in this case that "without the [improper] testimony, the record on the first trial of this case would not sustain a conviction." Furthermore, even the three dissenting judges who would have barred Petitioner's retrial under the Double Jeopardy Clause, did not base their position on the insufficiency of the State's evidence but instead argued that the prosecutorial misconduct "prejudice[d Buffington's] prospects for an acquittal." *Buffington v. State,* 652 S.W.2d 394, 396 (Tex.Crim.App.1983) (CLINTON, J., dissenting). Nor did the dissenters dis-

avoiding yet another trial ..." 658 F.2d at 386.

cuss whether Petitioner was criminally culpable despite the prosecutorial misconduct or "innocent in any sense of that word." The clear basis of the appellate reversal here was *Witherspoon* error, *Id.* at 394, and under *Tapp v. Lucas*, this conclusion by the highest state appellate court forecloses this Court's inquiry into the hypothetical state of the evidence absent the tainted testimony of Charles Moore. In this limited respect, the Court declines to adopt the findings of Judge O'Connor. *See* Magistrate's Findings at 12–14.

At oral argument, Petitioner's counsel sought to distinguish *Tapp v. Lucas* on the grounds that there was no egregious prosecutorial misconduct there, but instead an incorrect evidentiary ruling by the trial judge regarding a wife's privilege not to testify against her husband. Petitioner further argues that *Tapp v. Lucas* is not applicable because the prosecutorial misconduct in this case cannot be easily categorized as either trial error or insufficiency of the evidence—in fact the type of error committed in Mr. Buffington's first trial is a hybrid of the two.

Although there is some support in *Robinson v. Wade* for this second argument, the Court finds that *Tapp v. Lucas* establishes a conclusive rule which is not overturned by *Robinson*. A rather detailed review of *Robinson* may be necessary in addressing this argument. In its attempt to sort out the interests protected by the Double Jeopardy Clause and apply them to a situation where a mistrial had not been declared, the *Robinson* court wrote:

> Interpretation of the clause has hardly followed an unerring course.... the right to be spared multiple prosecutions has been accorded considerably lesser force where the earlier proceedings were terminated by a ruling on grounds independent of guilt or innocence, *Scott*, 98 S.Ct. at 2192, or where they have been found to be tainted by error, causing dismissal of the indictment ... or reversal on appeal ... or where a conviction supported by legally sufficient evidence is reversed for doubts as to the adequacy of the weight of evidence ... The interest asserted by Robinson, in essence a

charge that he was deprived a fair opportunity to win acquittal by purposeful and prejudicial prosecutorial misconduct, falls neatly into neither category....

The uncertainty, first noted by this Court in *United States v. Opager*, 616 F.2d 231 (5th Cir.1980), has its roots in certain language employed by the Supreme Court in an explanation of its holdings on the functions of the double jeopardy clause in the context of reprosecution following reversals on appeal. That Court in dicta has characterized its leading case in the area to hold that 'the successful appeal of a judgment of conviction, on *any ground other* than the insufficiency of the evidence to support the verdict, *Burks v. United States*, [437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1] (1978) ..., poses no bar to further prosecution on the same charge.' *Scott* 98 S.Ct. at 2193 ... *DiFrancesco* 101 S.Ct. at 434. The problem arises in that *Scott's* unequivocal statement could be read to indicate that retrial is not precluded where a verdict of conviction was rendered but reversed for prosecutorial overreaching on appeal. By implication, *Scott's* statement makes questionable preclusion where judgment of conviction was returned by the jury, but was set aside on grounds of overreaching by the trial court.

But that *Scott's* unyielding characterization of the limited interaction of the double jeopardy clause with prosecutions following reversals may admit too much becomes apparent on examination of *Kennedy*, and on appreciation of the rationale of *Burks* itself....

Nor is the rationale of *Burks* inconsistent with application of the 'prosecutorial overreaching' exception to bar retrial where the overreaching caused a tainted verdict to be set aside, rather than a tainted proceeding to be aborted. *Burks'* holding, resting on a perceived dichotomy between reversals of trial error and reversals for evidentiary insufficiency, indicated that, as the former hold no implication for the guilt or innocence of the defendant, they would raise no bar

to further prosecution. *Burks,* 98 S.Ct. at 2149. That distinction does not necessarily hold true where trial error is attributable to intentional prosecutorial overreaching. The extreme tactics which constitute prosecutorial overreaching offend the double jeopardy clause at least in part because they unfairly deprive the defendant of possible acquittal, by heightening, in a manner condemned by law, the jury's perception of the defendant's guilt, *see Kennedy,* 102 S.Ct. at 2096–97 (Stevens, J., concurring in the judgment). Whether the tactic condemned is successful in its objective of securing a mistrial, or unsuccessful, but causes the return of a verdict of conviction, would seem to be of little significance in development of a law of preclusion designed to protect this interest. *Id.; Opager* at 235–36; [*U.S. v.*] *Medina–Herrera* [606 F.2d 770] at 775; *United States v. Heymann,* 586 F.2d 1039 (5th Cir.1978). (emphasis added).

The *Robinson* opinion certainly raises many difficult questions which are beyond the realm of this Court to resolve. However, in declining to follow the Magistrate's finding and Petitioner's challenge to *Tapp v. Lucas,* several things must be noted. First, much of the passage from *Robinson* supporting Petitioner's position is dicta. Second, the critical part of the passage from *Robinson* criticizing the "unyielding characterization" of *Scott* and the "perceived dichotomy" between reversals based on trial error rather than insufficiency of the evidence, relies on Justice Stevens' concurring opinion in *Oregon v. Kennedy,* rather than the governing plurality opinion. While this Court may agree with many of Judge Johnson's and Justice Stevens' criticisms, it is not at liberty to ignore the unyielding characterization of *Scott,* which as far as this Court can determine, remains binding authority. *See Oregon v. Kennedy, supra,* 456 U.S. at 676 n.6, 102 S.Ct. at

2090, n.6. It is the reviewing court's task then to determine whether the reversal should be categorized as trial error or insufficiency of the evidence. Third, cases subsequent to both *Tapp v. Lucas* and *Robinson v. Wade* hold that where tainted evidence is admitted, such a mistake constitutes trial error rather than insufficiency of the evidence for double jeopardy purposes. *E.g., United States v. Marshall,* 762 F.2d 419, 423 (5th Cir.1985); *United States v. Sarmiento–Perez,* 667 F.2d 1239, 1240 (5th Cir.1982), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982); *United States v. Williams,* 661 F.2d 528 (5th Cir.1981).[10] Fourth, the *Robinson* decision did not deal with a case of prosecutorial misconduct which could be analyzed as a *Brady* violation. For all the foregoing reasons, this Court declines to rule in favor of Petitioner and finds *Tapp v. Lucas* to be controlling authority.

The Court does not find the egregiousness of the prosecutorial misconduct in this case to be of any relevance in determining whether Petitioner's first conviction was reversed for trial error or for insufficiency of the evidence. Under the authority of *Tapp v. Lucas,* the reversal must be characterized as trial error, and as such, the Double Jeopardy Clause does not bar Mr. Buffington's retrial.

In generally objecting to the recommendation of the Magistrate, Petitioner argues that the only remedy which would effectively deter similar prosecutorial misconduct would be a retrial bar. Petitioner argues that:

> It is easy to imagine a dishonest prosecutor who is anxious to bolster a case which, though capable of withstanding a sufficiency review on appeal, is in danger of being lost to a jury. To bolster this marginal case, the prosecutor may be tempted to engage in misconduct, thus depriving the defendant of his one fair

---

**10.** Although these cases were cited by the State for the same proposition as *Tapp v. Lucas,* the Court finds that *Marshall* and *Sarmiento* establish an *independent* ground for denying Petitioner relief. Even if this Court were empowered or required to evaluate the sufficiency of the evidence at Mr. Buffington's first trial, such a review would include the tainted evidence. When Moore's testimony and the testimony of the other witnesses, who Petitioner contends rests on the tainted testimony of Moore, are both considered, there can be no serious argument that the evidence at Buffington's first trial was legally insufficient to support a guilty verdict.

chance of acquittal before the first jury. If the Magistrate's standard is employed, the prosecutor has little to lose and much to gain, provided the untainted evidence is legally sufficient. If his misconduct is not discovered, the prosecutor has improved his chances of conviction. If it is discovered, he is allowed another 'bite at the apple' on retrial. Petitioner's Objections to the Findings and Recommendation of the United States Magistrate at 2–3.

There are several problems with this argument. First the egregiousness of the prosecutorial misconduct is not relevant under *Oregon v. Kennedy*. Under *Kennedy*, the inquiry must focus on the intent of the prosecutor rather than his bad faith and the ultimate question is whether he was attempting to provoke a mistrial. 456 U.S. at 675, 102 S.Ct. at 2089. That a prosecutor may wish to gain a conviction rather than provoke a mistrial is a scenario discussed by the concurring opinion of Justice Stevens rather than the controlling opinion of Justice Rehnquist. Second, as the Court later discussed in more detail, the defendant's valued right to have his guilt or innocence fairly determined by the first jury empanelled is not an absolute right. *See id.* 456 U.S. at 671–72, 102 S.Ct. at 2087. ("As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States v. Jorn*, 400 U.S. 470, 483–484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971) (plurality opinion); *Wade v. Hunter*, 336 U.S., at 689, 69 S.Ct., at 837. If the law were otherwise, the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again."). In this case the Court determines that whatever right Mr. Buffington had to have the first jury determine his guilt or innocence [11], this right must yield to society's interest in retrying the defendant. Third, other methods exist to deter unscrupulous prosecutors. One commentator has noted that a prosecutor who deliberately provokes a mistrial is in contempt of court, violates professional standards and may be subject to disciplinary action including disbarment, and is perhaps guilty of violating federal civil rights statutes.[12] Reiss, *supra*, at 1426, quoting *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316, 1325–26 (1983). There are other ways to deter prosecutorial misconduct, and in the Court's view, this interest simply isn't strong enough to justify the remedy requested.

Petitioner also objects to the Magistrate's Findings because it does not specifically address his due process claim under *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978). This Court agrees with the Magistrate's decision not to separately address this issue. Briefly, *Twigg* deals with a situation where the Government supplied an accused drug manufacturer with materials to make illegal drugs and the Government "sow[ed] the seeds of criminality and lure[d] the defendant into a conspiracy." *Id.* at 380. The facts here are readily distinguishable and this Court views *Kennedy*

---

11. The first jury in this case did of course reach a verdict, but Petitioner would argue that he should be entitled to a "fair" chance at acquittal. The Court believes this argument is foreclosed by *United States v. Singletary, supra.*

12. At no time during these proceedings before the Magistrate or the federal district court has the State attempted to explain or justify the deplorable conduct of Charles Conaway. At oral argument, Petitioner informed the Court that the State Bar of Texas investigated the prosecutor's misconduct but recommended that no disciplinary action be taken. This Court does not know the basis for the State Bar's decision, and under Local Court Rule 200–2, further disciplinary action against Mr. Conaway is not foreclosed even though the misconduct in this case occurred in state district court and Mr. Conaway has not been involved in these habeas corpus proceedings. *Cf. Waters v. Barr*, 747 P.2d 900 (Nev.1987) (State bar had authority to investigate alleged misconduct of federal prosecutor).

and *Brady* as being far more applicable analytical models for dealing with the defendant's Due Process concerns.

Even before *Oregon v. Kennedy* narrowed the prosecutorial overreaching exception to the general rule that appellate reversal of a defendant's conviction does not preclude retrial under the Double Jeopardy Clause, the exception was only applied in the exceedingly rare case. Justice Stevens noted this situation as an argument in favor of leaving the *Dinitz* overreaching standard undisturbed and further observed that one recent commentator could only locate two cases in which a federal appellate court barred reprosecution. *Id.* 456 U.S. at 691 n. 33, 102 S.Ct. at 2098, n. 33 (Stevens, J., concurring), citing, Note, *Double Jeopardy: An Illusory Remedy for Governmental Overreaching at Trial,* 29 Buffalo L.Rev. 759, 760 n. 16 (1980). Whether anything remains of the prosecutorial overreaching exception after *Oregon v. Kennedy* is further grist for the law review mill. This Court is satisfied, however, that in Petitioner's situation there is no authority for barring his retrial under the Double Jeopardy Clause.

In any event, the reprosecution bar is rarely invoked because the competing interests of society and the criminal justice system so strongly favor a complete adjudication of a defendant's guilt or innocence. As Justice Harlan observed in an oft-quoted passage from *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964):

> [O]f greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as

they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

These considerations, together with the culpability principles earlier discussed lead this Court to conclude that justice would best be served by a retrial of the Petitioner.

Finally, as an argument in the alternative, Petitioner requests that this Court at least bar the State from imposing the death penalty on Petitioner in a second proceeding. This alternative has been considered and rejected elsewhere, *Robinson v. Wade,* 686 F.2d at 309–10, and Petitioner's requested relief is therefore DENIED.

For all the foregoing reasons, it is ORDERED that Petitioner's writ be DENIED. It is FURTHER ORDERED that the stay granted earlier by this Court barring Petitioner's retrial be DISSOLVED.